986 So.2d 755 (2008)
CITY OF HARAHAN
v.
STATE of Louisiana, Through the DIVISION OF ADMINISTRATION.
No. 08-CA-106.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*756 Thomas P. Anzelmo, Sr., Lynda A. Tafaro, Attorneys at Law, Metairie, LA, for Plaintiff/Appellant.
*757 Honorable James D. "Buddy", Caldwell Attorney General, Ryan M. Seidmann, Irys L.V. Allgood, Assistant Attorney Generals, Baton Rouge, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
The City of Harahan ("the City") appeals the trial court's judgment denying its Petition for Declaratory Judgment and declaring that the property at issue in this litigation is owned by the State of Louisiana ("the State"). For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On March 9, 1978, the State purchased a piece of immovable property in Harahan, which included a building, from the local post of the Veterans of Foreign Wars. By Act 599 of the 1979 Regular Session, the legislature authorized the State to transfer this property to the City of Harahan. In October 1979, the City and the State executed an Act of Transfer in which the State transferred all of its right, title and interest in the subject property to the City of Harahan in order for the City to operate a Senior Citizen Center at that location.[1] However, the Act of Transfer also contained the following reversionary clause:
It is further understood and agreed that should the property hereinabove described which is the subject of this transfer cease to be used as a Senior Citizens Home for a period of five (5) consecutive years or should the buildings constructed on such property be removed therefrom, this transfer shall be null and void and the property shall revert to the Grantor and the Grantee or his successor in office hereby agrees to assign and execute the necessary instrument to restore title to the Grantor.
The City operated a Senior Center at the subject property from 1979 until 1985. The parties agree that at the time the Act of Transfer was executed, the building on the property was not in good condition. By 1985, the building was in deplorable condition due to weather, age, and termite damage. The City decided to build a new Senior Center on a different tract of land that was owned by the City. By Act 16 of the 1985 Regular Session, the legislature *758 appropriated $75,000 for the construction of the new Senior Citizen Center. Act 16 further provided that the City would repay this $75,000 to the State when it sold the land upon which the old Senior Center was located, which is the land at issue in this litigation.
In 1986, the City had the building on the subject property, which had been used for the Senior Citizen Center, demolished. According to the City, it re-subdivided the property into three lots and found a buyer for two of the lots, but the lots were never sold due to a "cloud" on the title to the property which was caused by the reversionary clause in the 1979 Act of Transfer. Thereafter, on February 20, 1987, the Commissioner of Administration for the State of Louisiana executed an Act of Correction which indicated that the parties did not want the reversionary language providing for return of the property to the State to be included in the 1979 Act of Transfer and stated that "the parties agree to reform and correct the aforementioned Act of Transfer so as to delete the above cited reversionary clause from the provisions thereof."
According to the City, on June 16, 1993, the City sent a letter to the State requesting that the State execute documents to clear the City's title to the property. The State requested an opinion from the Louisiana Attorney General regarding ownership of the property. In Opinion No. 93-681, dated December 30, 1993, the Attorney General concluded that, pursuant to the reversionary clause in the Act of Transfer, ownership of the subject property vested in the State when the City demolished the building on the property. Thus, the State has claimed ownership of the property.
On October 6, 2006, the City of Harahan instituted this lawsuit by filing a Petition for Declaratory Judgment and Damages, seeking a declaration that the City owns the subject property. Trial of this matter was held on April 26, 2007, and the matter was submitted on the exhibits and memoranda of the parties. On May 11, 2007, the trial judge rendered a judgment in favor of the State and against the City, denying the City's Petition for Declaratory Judgment and finding the State to be the rightful owner of the property. The judgment further ordered the City to execute the necessary documents to restore title to the State and reserved the City's claim for damages.
On May 21, 2007, the City filed a Motion for New Trial, which was granted by the trial court on June 28, 2007. The new trial was held on July 18, 2007. On August 15, 2007, the trial court rendered the same judgment it had previously rendered on May 11, 2007, denying the City's Petition for Declaratory Judgment and finding that the property was owned by the State. It is from this judgment that the City appeals.

LAW AND DISCUSSION
On appeal, the City asserts that the trial court erred in finding that the State owns the subject property. We disagree.
In Act 599 of the 1979 Regular Session, the legislature authorized the State to transfer its right, title and interest in the subject property to the City of Harahan, and this act did not specify any terms or conditions required for the transfer. However, the 1979 Act of Transfer is the contract between the parties that transferred ownership of the property from the State to the City, and this contract set forth a resolutory condition upon which ownership of the property would revert to the State. LSA-C.C. art. 1767 provides that a conditional obligation is one dependent on an uncertain event, and a condition is resolutory if the obligation may be immediately enforced but will come to an end when the uncertain event occurs.
*759 The Act of Transfer provides that if the property ceases to be used as a Senior Citizen Home for five consecutive years or if the building on the property is removed, the transfer shall be null and void and the property shall revert back to the State. The terms of this document are clear and unambiguous. Although the City contends that the property was always intended to remain in the City's ownership, the terms of the Act of Transfer provide otherwise. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046.
The parties agree that the building on the subject property was demolished in 1986. Pursuant to the clear wording of the resolutory condition in the Act of Transfer, the transfer of the property to the City was null and void and ownership of the property reverted back to the State when the building was demolished.
The City contends that ownership of the property did not revert to the State when the building was demolished, because the State did not request that the City return ownership to the State by executing any documents as required by the reversionary clause. However, the language of the reversionary clause reveals that the City's argument is without merit. The clause clearly indicates that the transfer of property shall be null and void if the building is demolished, and the property shall revert to the State. Although the clause states that the City "agrees to assign and execute the necessary instrument to restore title" to the State, this language does not indicate that the execution of documents is necessary for the State to regain ownership. Rather, it requires the City to execute any necessary documents to restore clear title to the State.
There is little caselaw precisely on this issue. However, the following cases provide guidance.
In Campbell v. Melton, 01-2578 (La.5/14/02), 817 So.2d 69, the Campbells entered into a purchase agreement with Melton for the purchase of Melton's home. An "additional provisions" clause in the agreement provided that "any single mechanical item repair that exceeds $2,000.00 the Seller has the option to repair or the contract will be null and void." Id. at p. 2, 817 So.2d at 72. The Louisiana Supreme Court found that the "additional provisions" clause was a resolutory condition clearly stating that the contract would terminate upon the happening of a condition, i.e. discovery of a mechanical item exceeding $2,000 to repair. Id. at p. 8, 817 So.2d at 76. Accordingly, the Court found that under the clear wording of the unambiguous clause, once the condition was fulfilled, the contract became null and void, unless Melton opted to make the repairs. Id. The Court further stated, "[t]he fact that the clause may have operated differently than typical real estate transactions by terminating automatically once the resolutory condition was proven does not render the clause ambiguous." Id. at p. 9, 817 So.2d at 76.
In Heirs of Primeaux v. Erath Sugar Co., Ltd., 484 So.2d 717 (La.App. 3 Cir. 1986), Felicien Primeaux conveyed land to Erath Sugar Company in 1909 to be used as the site for a sugar refinery. The document conveying the property to Erath contained the following clause:
.... in case said Refinery shall cease to operate for a period of ten successive years then and in that case said land shall revert to the said appearer, his heirs or assigns in full ownership free from any encumbrances whatever.
A sugar refinery began operating on the property in 1910, but the operations permanently *760 ceased in 1970. In 1983, the heirs of Felicien Primeaux filed a suit for declaratory judgment seeking return of the property pursuant to the reversionary clause. Id. at 719. The Third Circuit found that the conveyance document created a conventional predial servitude with a resolutory condition containing a reversionary clause that failure to operate a refinery for ten successive years would cause the property to revert to the grantor's heirs. Id. at 721. The Court found that upon cessation of the refinery operations for ten successive years, the property reverted back to the grantor's heirs in full ownership free of any encumbrances. Id.
In the present case, the clear wording of the reversionary clause reveals that the transfer of property to the City would be null and void and ownership of the property would revert to the State upon the happening of a resolutory condition, i.e. removal of the building from the property. Considering the language of the reversionary clause along with the applicable law, we find that ownership of the property vested in the State upon the demolition of the building on the property in 1986. Although the City was required to execute any documents necessary to clear the State's title to the property, the agreement does not provide that execution of any documents was necessary before ownership would revert to the State.
The City further argues that the trial court erred in finding that the Act of Correction was without effect. In her reasons for judgment, the trial judge found that the Act of Correction was of no effect because the resolutory condition in the reversionary clause of the Act of Transfer had already come into effect and vested ownership of the property in the State. We agree with the trial court and the State that the Act of Correction was without effect.
The Act of Correction was executed by the Commissioner of Administration for the State of Louisiana in 1987, which was after the resolutory condition had occurred and the transfer of the property to the City had become null and void. The Act of Correction could not revive the transfer of property which had already been rendered null and void by the occurrence of the resolutory condition.
In Suskind v. Shervington, 03-37 at p. 6 (La.App. 4 Cir. 4/16/03), 846 So.2d 93, 97, writ denied, 03-1376 (La.9/19/03), 853 So.2d 644, the Fourth Circuit found that a predication clause in a buy/sell agreement between a prospective home purchaser and seller was a resolutory condition, and the agreement automatically became null and void when the resolutory condition occurred. The Court further found that a "Removal of Predication" executed by the parties after the buy/sell agreement became null and void could not revive the buy/sell agreement. Id.
Even if the Act of Correction had been executed prior to the occurrence of the resolutory condition, it does not comply with LSA-R.S. 35:2.1, which sets forth the requirements for an Act of Correction. LSA-R.S. 35:2.1(B) provides that the act of correction shall not alter the true agreement and intent of the parties. The parties clearly intended to include the reversionary clause in the Act of Transfer, as this was obviously not an inadvertent or clerical error. Thus, deletion of the reversionary clause would alter the true agreement at the time the Act of Correction was executed, in violation of LSA-R.S. 35:2.1(B). Further, although the Act of Correction was in authentic form, it does not meet the requirements set forth in *761 LSA-R.S. 35:2.1(A).[2]
The City contends that the Act of Correction in this case need not comply with the formalities in LSA-R.S. 35:2.1, because this statute only governs Acts of Correction that correct clerical errors and the Act of Correction in this case attempts to correct a substantive error. We find this argument unpersuasive. We are not aware of any statute or other authority permitting amendment of the substantive terms of a contract via an Act of Correction. Further, it would be illogical to find that the correction of a clerical error would be subject to more stringent requirements, as set forth in LSA-R.S. 35:2.1, than correction or amendment of substantive terms in an agreement.
The City also contends that even if the reversionary clause was triggered in 1986, the 1987 Act of Correction constitutes a valid contract between the parties that clearly and unambiguously removed the reversionary clause and transferred the property to the City, and it must be given effect according to the true intent of the parties. However, the language of the Act of Correction is insufficient to transfer title to the property. Further, even if the Act of Correction had the necessary requirements to transfer property to the City, the document would still be invalid because the Act of Correction does not set forth any consideration for the transfer in 1987, other than "for the considerations originally cited," and gratuitous donations of property by the State are prohibited by LSA-Const. Art. VII, § 14.
Considering the law and evidence before us, we agree with the trial court that the Act of Correction executed in 1987 was without effect.
The City further asserts that the trial court erred in concluding that the reversionary clause was necessary to render the Act of Transfer constitutional. In her reasons for judgment, the trial judge stated that the "reversionary clause formed the constitutional lynchpin of the Act of Transfer, preventing the transfer from constituting a prohibited gratuitous donation of property by the State." The City argues that the reversionary clause was not constitutionally necessary because the property was not gratuitously donated to the City. Rather, the City claims that the consideration for the transfer of property was the City's operation of the Senior Center for the benefit of all Jefferson Parish residents from 1979 to 1985, which cost the City $63,900 and rendered the transfer non-gratuitous.
Although the City argues that the Act of Transfer would have been constitutional absent the reversionary clause, a determination of whether or not the reversionary clause in the Act of Transfer was constitutionally *762 necessary is not required in order to decide the issues on appeal. Regardless of whether or not the reversionary clause was required, the fact remains that the reversionary clause was included in the Act of Transfer. Although the Act of Correction purported to remove the reversionary clause from the Act of Transfer, we have found the Act of Correction to be invalid and without effect. Thus, the constitutionality of the Act of Transfer without the reversionary clause need not be determined.
Considering the record before us along with the applicable law, we find that the trial court correctly found that the State is the owner of the subject property and denied the City's Petition for Declaratory Judgment. The State regained ownership of the property in 1986 when the building on the property was demolished. Neither the 1987 Act or Correction, nor any other document or legislative act, transferred ownership of the property back to the City. Accordingly, we affirm the trial court's judgment.

DECREE
For the foregoing reasons, we affirm the trial court's judgment, denying the City's Petition for Declaratory Judgment, finding that the property is owned by the State of Louisiana, and ordering the City to execute any documents that are necessary to restore clear title to the State.
AFFIRMED.
NOTES
[1] The subject property in the Act of Transfer is described as:

That certain parcel of ground together with all buildings and improvements thereon, designated as LOTS ELEVEN (11) and TWELVE (12) and a portion of LOTS THIRTEEN (13), FOURTEEN (14) and FIFTEEN (15) of Square 3, LOTS ONE (1) and TWO (2) and a portion of LOTS THREE (3) and TWENTY-THREE (23) of Square C, and the portion of the former Third Street between Squares "B" and "C" of Harahan, Jefferson Parish, Louisiana, and more particularly described as follows:
Beginning on the northern boundary of the property at its intersection with V.F.W. boulevard, this being designated as the point of beginning, proceed west One Hundred Twenty-Three and 91/100 (123.91') feet to a point and corner; thence proceed south One Hundred Forty-Nine and 80/100 (149.80') feet along the eastern side of Bailey Street to a point and corner; thence proceed east One Hundred Seventy and 44/100 (170.44') feet to a point and corner; thence proceed north One Hundred Thirty and 80/100 (130.80') feet to the point of beginning.
Being a part of the same property acquired by Jefferson Parish Post No. 3267 Veterans of Foreign Wars of the United Stated Incorporated by act before Harold A. Buchler, Notary Public, dated November 9, 1959, registered in COB 294, Folio 436; thereafter acquired by Grantor herein by Act of Sale of Property before George L. Gibbs, Notary Public, dated March 9, 1978, registered in COB 921, Folio 513.
[2] LSA-R.S. 35:2.1 provides:

A. A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error. The act of correction shall be executed by the notary before two witnesses and another notary public.
B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.
C. A certified copy of the act of correction executed in compliance with this Section shall be deemed to be authentic for purposes of executory process.
D. This Section shall be in addition to other laws governing executory process.