Dear Mr. Haney:
You have requested an opinion from this Office regarding the ownership status of certain school board property in Iberia Parish. Specifically, you provide the following facts:
The Iberia Parish School Board ("the Board") acquired two parcels of property, upon which is located one school, one by sale in 1906 and one by fifty-year lease in 1960. The 1906 sale documents, which you have provided for our review, contain reversionary language that states that:
 It is agreed and understood that this lot, presently sold, is specially for the purposes of a White Public School for no other purposes, that should said Public School be discontinued there in that case the said lot shall return to present Vendor free from encumbrances.[1]
The Peebles Elementary School was erected on the property. The subject school was integrated in 1969.[2] In addition, the school was vacated in 2005 due to damage caused by Hurricane Rita. The Board now desires to sell the property upon which this school sits. However, in light of the above-quoted reversionary clause, you have the following questions regarding the Board's rights and duties with respect to the land:
 1. Does the Board have an enforceable obligation to return the properties? *Page 2 
 2. If the answer to question 1 is "yes", has prescription tolled on any reversionary language in the respective deeds?
 3. If the answer to question 2 is "yes", can the Board legally demand the appraised value with all improvements (are improvements considered encumbrances)?
Each of these questions, to the extent that they are necessary, are addressed, in turn, below.
I. The Deeded Property
Because the total piece of property upon which the Peebles Elementary School is situated is actually comprised of two separate tracts — one purchased and one leased — there are necessarily two answers to each of your questions. The first portion of this opinion considers your questions with respect to the property that the Board acquired by deed in 1906.
A. Does the Board have an enforceable obligation to return theproperties?
The implications and effects of reversionary clauses in property transfers was recently succinctly addressed by the Louisiana Fifth Circuit in the matter of City of Harahan v. State of Louisiana, 08-106 (La.App. 5 Cir. 5/27/08), 986 So.2d 755. In this case, the court held that once the terms of a reversionary clause ceased to be met, the clause is activated and the property at issue was to return to the original owner. Thus, as a general principle, the language of a reversionary clause in a property transfer, if clear, will result in the return of the property if the clause is triggered.
As an initial matter, we find La.C.C. Art. 478 of particular import to this question. That article provides, in pertinent part (emphasis added), that:
 The right of ownership may be subject to a resolutory condition, and it may be burdened with a real right in favor of another person as allowed by law.
Because we are of the opinion that the reversionary clause in the 1906 deed is properly classified as a resolutory condition, [3] we believe that La.C.C. Art. 478 is *Page 3 
relevant to this situation. That law requires that the resolutory condition be one that is "allowed by law." As noted above, because school segregation is no longer legal in the United States, the resolutory condition in the 1906 deed would not be a condition that is allowed by law. However, because the condition was allowed by law at the time that it was executed (1906), we are doubtful that the requirements of La.C.C. Art. 478 can be used to retroactively strip this provision from the deed.
The courts of this State have looked disfavorably upon conditions in the acquisition of property by one elected body that will bind subsequent bodies as to the use of the property. See e.g., Anderson v. Thomas,117 So. 573 (La. 1928); Landry v. Council of East Baton Rouge Parish,220 So.2d 795 (La.App. 1 Cir. 1969). Thus, as an initial matter, the resolutory condition contained in the deed that you have provided to this Office is suspect in that it would bind the current Board based upon the morals and judgment of the Board in 1906. However, because the conditions complained of by the courts in the above-cited cases were added by the purchasers (the public entities) and not the sellers, the holdings of those courts that such conditions are not binding on future uses of the property are not determinative of the questions that you raise.
The next obvious question in this matter is: Can the above-quoted clause be stricken from the deed? In a recent opinion, Judge Lemelle of the Eastern District of Louisiana wrote the following concerning whether particular provision of a contract could be stricken due to their violations of public policy:
 The Louisiana Supreme Court has held that the dissolution of a contractual provision because it goes against public policy does not necessarily dissolve the entire contract. The court stated, "It is not necessary that the entire agreement containing the stipulation against public order or policy be declared null." Morse v. J. Ray McDermott Co., Inc., 344 So.2d 1353, 1358 (La. 1976). See also Henderson Implement Co., Inc. v. Langley, 707 So.2d 482
(La.App. 3rd Cir. 1998) (It is not necessary that the entire agreement containing a provision against public policy be declared null and void; courts are free to recognize, by interpretation of will of the parties, that a provision inserted the in the agreement is only an accessory clause to which the agreement was not subject for its *Page 4 
existence, and delete the offending provision while enforcing the remainder of the agreement); Wilson Warehouse Company of Texas Inc. ., v. Maryland Casualty Co., 269 So.2d 562 (La.App. 1st Cir. 1972) (In order to avoid inequities, courts will sever the illegal and unenforceable provisions of the contract from the remainder of the contract rather than declare the entire contract void.); Starke Taylor Sons, Inc., v. Riverside Plantation, 301 So.2d 676, 680
(La.App. 3rd Cir. 1974) (If the enforceable provision of a contract can be severed from the unenforceable provisions, courts should, in order to avoid inequities, sever the enforceable from the unenforceable portion rather than declare the entire contract void).
Rathborne Land Co., LLC v. Ascent Energy, Inc., 2006 WL 2726367, 3
(E.D.La. 2006). Thus, it is clear that the Louisiana courts have recognized the need to sever offending portions from contracts from time to time in the greater interest of letting those contracts stand.[4]
The line of cases cited in Rathborne would seem to suggest that the segregation clause of the Peebles Elementary School deed is severable from the remaining document, as it would now be illegal to enforce.[5]
However, because the cases cited in the Rathborne opinion rely on "the will of the parties" to determine severability, we believe that severance of the offending language herein raises substantial fact questions regarding the importance of the condition that are not proper for this Office to address.[6] That said, the *Page 5 
prominence of the condition in the deed raises the substantial possibility that the segregatory nature of the school was a major cause for the sale.[7] Although such a fact-laden question would properly be a matter for judicial determination, for the reasons set forth below, we do not believe that such questions need to be answered.
Because the questions that you ask relate to the cause of the contract (the 1906 deed), a consideration of the enforceability of an illegal cause is warranted. In this regard, La.C.C. Art. 1968 states that,
 [t]he cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy.
Because the subject cause in this matter is both illegal and in violation of public policy, we have no qualms about labeling it unenforceable. In addition, unlike the "as allowed by law" provision of La.C.C. Art. 478, the unenforceability language of La.C.C. Art. 1968 is triggered at the time when the cause is attempted to be enforced, not at the time when the contract is entered into. Thus, there would be no problem of the retroactive impairment of contracts when a violation of the law and of public policy would occur now failing to enforce the segregation requirement in the 1906 deed, as, at the time of its enforcement (now), it is a violation of the law and public policy.[8]
Nonetheless, if the "obligation" is the entire sale (the 1906 deed), we believe that this option would obtain the same result as in the Evans
cases: the failure of the cause would result in the failure of the contract. On the other hand, if, as we here opine, the "obligation" is merely the obligation to give effect to the resolutory condition, then the failure of the cause would not result in the failure of the contract, but rather just severing of the offending clause. Nonetheless, although we are unable to definitively opine that the Peebles Elementary School property can remain the property of the Board because of the unenforceability of the segregation clause, for the reasons discussed below, we are of the opinion that such a determination is unnecessary, as the property appears to have vested in the Board's ownership for other reasons that rest on a clearer legal basis.
It is the opinion of this Office that the basis for the Board's full ownership of the Peebles Elementary School property, with no obligation to return the property for *Page 6 
the failure to keep the school segregated, lies in the Louisiana law of prescription. When Peebles Elementary School was integrated in 1969, this action was, while required by law, a clear and open breach of the 1906 sale contract.
The prescriptive period for bringing a breach of contract claim in Louisiana is ten years. La.C.C. Art. 3499; Babkow v. Morris Bart,P.L.C., 1998-0256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423. Thus, an action against the Board based upon its legally required breach of contract prescribed in 1979, some 30 years ago.
Accordingly, in answer to your first question, it is the opinion of this Office that, although the Board breached the segregation terms of the deed, that clause is now inoperable as a means to rescind the sale, as all actions that might be brought for said breach have prescribed.[9]
Therefore, the Board does not have an enforceable duty to return the Peebles Elementary School property for its failure to adhere to the segregation requirement. The Board now owns that property without any strings attached.
B. If the answer to question 1 is "yes", has prescription tolled onany reversionary language in the respective deeds?
Your second question, as to the deeded property, is answered by the answer to the first question and is thus considered no further.
C. If the answer to question 2 is "yes", can the Board legally demandthe appraised value with all improvements (are improvements consideredencumbrances)?
The answer to your third question, as to the deeded property, is moot based upon the answer to your first question.
D. Is there an "offer back" provision that the Board can use to sellthe property back to the original owners?
During telephone conversations subsequent to your opinion request, you inquired whether the Board could offer the subject property back to the original owners in the event that the Board was the owner of the property. Because we have determined that the Board is the owner of the subject property, we address your question regarding whether, under the Public Bid Law, the Board can offer the property back to the original owners before putting it up for bid (assuming that the Board wants to divest itself of the property). *Page 7 
To answer this question, we refer you to La.R.S. 41:1338. Generally, that law requires that property no longer needed by the State (in this case, including school boards) be offered first to the original vendor of the property before the property is offered for sale to other third parties. However, La.R.S. 41:1338(C) provides that this mandatory "offer back" provision does not apply to school board owned property. Thus, it is our opinion that, while permissible, there is no legal requirement that the Board offer the subject property back to the original vendors. Further, should the Board decide to offer the subject property back to the original vendor, the price must be one of fair market value. La.R.S. 41:1338. The procedures for such sales are provided, in detail, in La.R.S. 41:1338, and we refer you to them should the Board decide to divest itself of the subject property via this mechanism.
II. The Leased Property
The second portion of this opinion considers your questions with respect to the property that the Board acquired by a fifty-year lease in 1960. It should be made clear at the outset that the 1960 lease does not contain any language that relates to the use of the property for a segregated school. Thus, none of the above discussion is applicable to the leased property.
A. Does the Board have an enforceable obligation to return theproperties?
The operative language in the 1960 lease reads as follows:
 It is agreed and understood that the property herein leased shall be used only for school purposes and the failure to put said property to such use for a period of one (1) year shall, ipso facto, terminate this lease.[10]
It is the opinion of this Office that there is no facial deficiency or unenforceable portion of this lease. The lease term is for 50 years, which would mean that the lease would run its course on December 14, 2010. In direct answer to your questions, it is the opinion of this Office that on December 14, 2010, the Board has an obligation to return the leased property unless the lease has been extended or the property has been purchased by the Board before that time.
B. If the answer to question 1 is "yes", has prescription tolled onany reversionary language in the respective deeds?
Because there is no reversionary language in this lease, this question is inapplicable to the leased property. *Page 8 
 C. If the answer to question 2 is "yes", can the Board legally demandthe appraised value with all improvements (are improvements consideredencumbrances)?
Although it is clear that this question is more related to the sale document discussed in Part I of this opinion, there is some relevance of this question to the leased property. The relevant language in the leases states that:
 At the termination of this lease for any cause, the lessee, Iberia Parish School Board, is specifically granted the right to remove from said property any buildings or improvements placed thereon by it.[11]
It is apparent from your request letter that this language could pose a problem for the Board, as the structures currently in place on the purchased and leased property span both tracts. Thus, the removal of improvements from the leased property could well mean the destruction of the improvements on the property that the Board owns on the 1906 deeded property. Again, this reality strongly suggests that the Board should make all efforts to either purchase the leased property outright or to at least seek a lease extension from the land owner if it wishes to retain an interest in the currently-leased land.
We should note that the above-quoted language is essentially a contractual recapitulation of the provisions of the Civil Code relating to lessees rights and improvements. Specifically, La.C.C. Art. 2695
provides:
In the absence of contrary agreement, upon termination of the lease, the rights and obligations of the parties with regard to attachments, additions, or other improvements made to the leased thing by the lessee are as follows:
 (1) The lessee may remove all improvements that he made to the leased thing, provided that he restore the thing to its former condition.
 (2) If the lessee does not remove the improvements, the lessor may:
 (a) Appropriate ownership of the improvements by reimbursing the lessee for their costs or for the enhanced value of the leased thing whichever is less; or
 (b) Demand that the lessee remove the improvements within a reasonable time and restore the leased thing to its former *Page 9 
condition. If the lessee fails to do so, the lessor may remove the improvements and restore the leased thing to its former condition at the expense of the lessee or appropriate ownership of the improvements without any obligation of reimbursement to the lessee. Appropriation of the improvement by the lessor may only be accomplished by providing additional notice by certified mail to the lessee after expiration of the time given the lessee to remove the improvements.
 (c) Until such time as the lessor appropriates the improvement, the improvements shall remain the property of the lessee and the lessee shall be solely responsible for any harm caused by the improvements.
We do not believe that the lease provision modifies this law in any way, but rather simply memorializes it as part of the lease. Thus, should the lease terminate without an extension, the lessor would have the option of keeping the improvements if the Board does not elect to remove them.[12]
The exercise of this option would require some reimbursement to the Board as provided by La.C.C. Art. 2695. Thus, although the Board clearly owns the improvements on the leased property, there appears to be no way for the Board to acquire an ownership interest in that property short of negotiating a sale with the current owner. Accordingly, it is the opinion of this Office that the Board is subject to the lessor's rights with respect to improvements under La.C.C. Art. 2695 as set forth above.[13]
Because of this opinion, we again strongly suggest that the Board make every effort to acquire either ownership of the footprint of the structure as it extends onto the leased property or to extend the lease of the property if it wishes to retain an interest in the currently-leased land. *Page 10 
Finally, concerning your question of whether an improvement constitutes an encumbrance on a piece of property, it is the opinion of this Office that it does not. An encumbrance is defined by Black's Law Dictionary (8th ed.) as:
 A claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest.
Thus, it is clear that an encumbrance is an inchoate right that attaches to a piece of property and not a tangible thing such as a property improvement. Accordingly, it is our opinion that an improvement is not the same as an encumbrance.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By:__________________________ RYAN M. SEIDEMANN Assistant Attorney General
 JDC/RMS/tp
[1] Act of Sale dated July 19, 1906, COB 58/546/18932, Iberia Parish, Louisiana. Copy on file with the Louisiana Department of Justice.
[2] It is important to note that this integration was required by law.Brown v. Board of Ed. of Topeka, Shawnee County, Kan., 347 U.S. 483
(1954)
[3] It is important to note the definition of resolutory conditions and how they work in Louisiana. That definition comes from La.C.C. Art. 1767, which states (emphasis added):
 A conditional obligation is one dependent on an uncertain event.
 If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
 If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.
In this situation, because the obligation was immediately enforceable (i.e., the sale) and the failure of the sale is conditioned on the integration of the school, we are of the opinion that the segregation language in the deed is clearly a resolutory condition.
[4] During the course of our research, we have not been able to identify any cases that directly address the questions that you present. However, two United States Supreme Court cases were identified that do merit some attention: Evans v. Abney, 396 U.S. 435 (1969) and Evans v.Newton, 382 U.S. 296 (1966). Both of these cases stem from a dispute in Georgia regarding a restrictive covenant in a donation mortis causa of property to be used as a segregated park that is similar to the reversionary clause in the Peebles Elementary School deed. In these cases, the Court found that, in light of the Fourteenth Amendment restrictions against segregation, it would be unconstitutional for the City of Macon to accept the donation of the property for a park and to then enforce the segregation requirements of the donor. However, the court also held that the covenant expressed by the donor was a substantial basis for the donation and that, although it would be illegal to give it effect today, it was not severable from the act of donation under Georgia law. Thus, the City's only option was to decline the donation. Although these cases dealt with the Georgia law of successions, they may be indicative of a tendency for the United States Supreme Court to disagree with the Rathborne-type holdings of the Louisiana courts. It is important to note that, although both of theEvans cases can be said to have been rendered during the Civil Rights Movement of the 1960s, they are subsequent to the overruling of thePlessy v. Fergusson, 163 U.S. 537 (1896), separate but equal rule (see,Brown v. Board of Ed. of Topeka, Shawnee County, Kan., 347 U.S. 483
(1954)). Thus, these cases appear to present the most recent pronouncement of the U.S. Supreme Court on such matters in a post-Plessy
environment.
[5] We believe that the fact that the segregation clause is illegal rather than just a violation of public policy as are the offending clauses in the cases cited in Rathborne makes the Peebles Elementary School situation an even stronger candidate for severance.
[6] La.R.S. 49:251(A) states that "the attorney general shall give his opinion in writing upon all questions of law" to elected and appointed state officers as required by statute. It is the policy of this office that we will not seek out the facts or infer the questions from the opinion request. The Attorney General will not furnish opinions on questions of fact; nor will the Attorney General issue an opinion on questions scheduled for determination by the courts, or where the prospect of litigation appears imminent. See, La. Atty. Gen. Op. No. 07-0111.
[7] However, it is unclear that this major cause was the only or primary cause. This is an important distinction, as the failure of a primary cause would result in the failure of the contract. Saul Litvinoff, Still Another Look at Cause, 48 LA. L.REV. 3, 18 (1987) ("A cause may exist at the inception of an obligation and then fail. When such is the case the obligation ceases to exist when its cause fails.").
[8] See also, La.C.C. Art. 1813.
[9] Although we have spent a considerable amount of time examining the cause for the sale in this matter, and have noted that a failure of cause would mean a failure of the contract (deed), we also are of the opinion that the failure of the vendor or his heirs or assigns to bring an action for breach of contract based upon the failure of cause is also subject to the prescriptive periods outlined above, all of which have lapsed.
[10] Lease dated Dec. 14, 1960, COB 444/117593, Iberia Parish, Louisiana. Copy on file with the Louisiana Department of Justice.
[11] Id.
[12] However, as is noted by Resweber, if the thing was constructed with the consent of the lessor, it remains the property of the lessee even after the termination of the lease. Brad R. Resweber, Opening theCan of Worms and Putting Them Back In: An Analysis of New Louisiana CivilCode Article 2695, 67 LA. L.REV. 571, 592-593 (2007) (commenting that, for the ownership of improvements, one must look to La.C.C. Art. 493 and the law of accession, while La.C.C. Art. 2695 provides for the rights and duties of the parties with respect to how to handle such improvements in the case of lease). See also, Peter S. Title, Alterations —Improvements, additions and trade fixtures and the revisions effectiveJanuary 1, 2005, 2 LA. PRAC. REAL EST. § 18:49 (2d ed.) (2008-2009). Because it is clear from the lease that the intended use of the property was for the construction of a school, it can easily be said that the lessor consented to the building that now rests on the property. Thus, it is the opinion of this Office that the School Board clearly owns the portion of the Peebles Elementary School that is situated on the leased property. Accordingly, this supports the notion that the Board should be due reimbursement should the lessor elect to retain the improvements. All of this is, however, subject to the allowances in La.C.C. Art. 2695 that permit the lessor to demand the removal of the improvements.
[13] It is important to note that we can find no Louisiana case in which a court has considered such a scenario. It seems doubtful that a court would permit the destruction of a building that partially overlaps some formerly leased property if the parties cannot reach an agreement as to the disposition of the improvements or the underlying property.