KNOLL, Justice,
dissents.
|! With all due respect, I dissent. In my view, an act of correction pursuant to La. Rev.Stat. § 35:2.1 cannot reinstate a mortgage cancelled from the public records. Under La. Civ.Code art. 3366(B), once First National’s mortgage was cancelled it was extinguished from the public records and could not be reinstated absent a court order. The majority’s reading of La.Rev. Stat. § 35:2.1 permits acts which go far beyond mere correction. The plain language of the statute and its legislative history do not support such an expansive reading. Further, the majority’s interpretation of La.Rev.Stat. § 35:2.1 runs contrary to the principles of the Louisiana Public Records Doctrine and would create practical difficulties for real estate transactions.
First, the plain language of La.Rev.Stat. § 35:2.1 does not expressly permit the reinstatement of a mortgage cancelled from the public records. The statute merely provides “[a] clerical error ... may be corrected by an act of correction....” The generally understood meaning of “correction” is “a change that rectifies an error or inaccuracy.” New Oxford American Dictionary (3d ed.2010). Under the majority’s interpretation, the statute would permit acts of greater substance than changing an inaccuracy, as it would allow a party to impose a real right on property by reinstating a cancelled mortgage. See La. Civ.Code art. 3280.
|2The majority notes the statute contains no express limitation on this practice. In interpreting a statute, however, courts have a duty to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. La. Civ.Code art. 13. The Legislature is presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of construction, and with knowledge of the effect of their acts and a purpose in view. Fruge v. Bd. of Trustees of the Louisiana State Employees’ Ret. Sys., 08-1270, p. 18 (La.12/2/08); 6 So.3d 124, 136. *959 Further, a law may only be applied literally if its application would not lead to absurd consequences. La. Civ.Code art. 9. A consequence is “absurd” if “the specific application at issue arising from the literal wording would, if judicially enforced, produce a factual result so inappropriate as to be deemed outside the ‘purpose’ of the law.” P. Raymond Lamonica & Jerry G. Jones, 20 Louisiana Civil Law Treatise: Legislative Law and Procedure, § 7.4 (2004).
The majority errs by not considering statutes and jurisprudence regarding re-cordation and the effects of cancellation. Under the Louisiana Public Records Doctrine, interests in real estate must be recorded in order to affect third persons. Cimarex Energy Co. v. Mauboules, 09-1170 (La.4/9/10); 40 So.3d 931, 943. In other words, an instrument in writing affecting immovable property which is not recorded is null and void except between the parties. Id. (citing Peter S. Title, Louisiana Real Estate Transactions, § 8.1 (2009)). With regards to mortgages, La. Civ.Code art. 3366(B) provides “[t]he effect of recordation of the instrument ceases upon cancellation by the recorder.”
In the present case, both First National’s mortgage and the Bering mortgage on Lot 8 were properly recorded. Consequently, when the Clerk of Court cancelled the mortgage, it was removed from the public records and identified as “cancelled” in the St. John the Baptist Parish mortgage records. Thus, when First National |aexecuted an act of correction several months later, it was too late to effect any change in the mortgage, as it had already been removed from the public records. Simply put, once First National’s mortgage was cancelled, there was nothing left for it to correct.
Further, the Clerk of Court did not have the authority to reinstate the mortgage following cancellation. This Court has held, while the Clerk of Court or Recorder of Mortgages may be ordered to reinscribe a cancelled mortgage upon his or her records, “it is the function of the Court to reinstate [a cancelled mortgage].” Carrere v. Reddix, 211 La. 566, 570, 30 So.2d 432, 433 (1947). Our jurisprudence, both before and after the enactment of La.Rev. Stat. § 35:2.1, has clearly and repeatedly shown a court is the proper authority for reinstatement. See Urban Property Co. of La., L.L.C. v. Pioneer Credit Co., 04-246, p. 7 (La.App. 5 Cir. 8/31/04); 882 So.2d 1178, 1182; Pioneer Enter., Inc. v. Goodnight, 561 So.2d 824, 828-29 (La.App. 2 Cir.1990); McL. Dev. Co. v. Pyburn, 268 So.2d 296, 297 (La.App. 2 Cir.1972) (actions to reinstate cancelled mortgages to the public records). While First National’s act of correction may have conformed to the requirements of La.Rev.Stat. § 35:2.1, it can have no legal effect beyond correcting the clerical error. First National’s only recourse was to commence an action in the District Court seeking to reinstate its mortgage. As noted above, a court should presume the Legislature was aware of ’these laws and cases in enacting La.Rev.Stat. § 35:2.1.
Additionally, I find nothing in the language of La.Rev.Stat. § 35:2.1 permitting First National to. effectively re-rank the priority of mortgages on Lot 8 through its act of correction. When the Clerk of Court cancelled First National’s mortgage, the Bering mortgage became at once, by operation of law, a first mortgage on the property. See, e.g., Southern Casualty Co. v. Ross, 179 La. 145, 148, 153 So. 673, 674 (1934); Louisiana Nat’l Bank of Baton Rouge v. Belello, 577 So.2d 1099, 1102 (La.App. 1 Cir.1991). Upon First National’s act of correction, its mortgage again primed the Bering mortgage. When First National cancelled its mortgage on Lot 8, *960 U.S. Bank acquired real rights over the property, which it then lost through First National’s subsequent act of correction. Cf. Craftsmen Homes, Inc. v. Hollywood Door Co., Inc., 583 So.2d 879, 883 (La.App. 1 Cir.1991) (an act of correction has no effect against third parties until it is recorded, and is “ineffective as to third persons who have acquired a valid interest in the immovable in the interim”). This substantive change far exceeds the scope of the statute. The Legislature enacted La. Rev.Stat. § 35:2.1 only to correct clerical errors; it does not extend to rank privileges.
Second, the majority’s interpretation of the statute is not supported by its legislative history. La.Rev.Stat. § 35:2.1 initially provided for acts of correction for “any obvious discrepancy or error in ... the description of immovable property.”[1] Acts 1984, No. 245, § 2. In 1987, the statute was amended to permit correction of “clerical error[s] ... affecting movable or immovable property or any other rights.” Acts 1987, No. 407, § 1. The majority concludes this language indicates an almost limitless application for the statute. I am not persuaded the correction of a “clerical error” permits a party to make substantive changes, such as reinstating cancelled mortgages or re-ranking the priority of mortgages. Further, there is nothing in the legislative history to support the majority’s reading of the statute. The sponsor of the 1987 amendment stated using acts of correction to remedy clerical errors “has been [the practice] for years in Louisiana”; the amendment would merely “place the procedure in the statutes.”[2] Senate Comm, on |sJudiciary A: Minutes of Meeting of June 16, 1987 (testimony of Rep. Clark Gaudin). There is no indication, however, acts of correction were used pri- or to the enactment of La.Rev.Stat. § 35:2.1 to reinstate mortgages or other instruments cancelled from the public records.[3] Given this history and the relatively modest purpose behind the statute, I find it difficult to believe the Legislature intended such an expansive reading of the statute. See ABL Mgmt., Inc. v. Bd. of Supervisors of Southern Univ., 00-0798, p. 6 (La.11/28/00); 773 So.2d 131, 135 (when interpreting a statute, a court should give it the meaning the Legislature intended).
Although the majority correctly notes no appellate cases have addressed the precise issue here, the Fifth Circuit considered an analogous issue in City of Harahan v. State ex rel. Division of Administration, 08-106 (La.App. 5 Cir. 5/27/08); 986 So.2d 755. In 1979, the State transferred a piece of immovable property to the City of Har-ahan to operate a senior citizen center. The act of transfer provided, if the property ceased to be used as a senior citizen center or the buildings constructed on the property were removed, transfer would be *961 null and void and the property would revert to the State. Id.¡ 08-106 at 2-3; 986 So.2d at 757. Several years later, the City had the building on the property demolished. Id., 08-106 at 3-4; 986 So.2d at 758. The State then executed an act of correction indicating the parties did not want the reversionary language included in the 1979 act of transfer. Id., 08-106 at 4; 986 So.2d at 758. The court of appeal held the act of correction was without effect. The resolutory condition in the act of transfer had already come into effect, and the State’s later act of correction “could not revive the transfer of property which had already been rendered null and void by the | fioccurrence of the resolutory condition.” Id., 08-106 at 8; 986 So.2d at 760.
The reasoning of the Fifth Circuit is equally applicable to the present case. In City of Harahan, the state could not correct the act of transfer once it no longer had any legal effect. Here, cancellation of the mortgage by the Clerk of Court had the immediate effect of removing the mortgage from the public records and elevating the Bering mortgage. Once First National’s mortgage was cancelled, it lost the effects of recordation and was extinguished. La. Civ.Code art. 3366(B); see La.Rev.Stat. §§ 9:5172, 5173 (a financial institution requesting cancellation must declare the “obligation was extinguished”). As in City of Harahan, First National Bank’s act of correction cannot breathe new life into an instrument which has been rendered null and void.
Finally, the majority fails to consider the principles underlying the Public Records Doctrine, as well as the practical difficulties presented by their decision. The Public Records Doctrine has been described as a negative doctrine because it does not create rights, but, rather, denies the effect of certain rights unless they are recorded. Cimarex, 40 So.3d at 944. In explaining the negative nature of the doctrine, we have stated, while third persons are not allowed to rely on what is contained in the public records, they can rely on the absence from the public records of those interests that are required to be recorded. Id.; Camel v. Waller, 526 So.2d 1086, 1090 (La.1988) (citing William V. Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tul. L.Rev. 491 (1965)).
Further, a primary purpose of the Public Records Doctrine is to assure the stability of land titles. Cimarex, 40 So.3d at 943; Blevins v. Manufacturers Record Pub. Co., 235 La. 708, 105 So.2d 392, 414 (1958) (Tate, J., on reh’g). Permitting an act of correction to revive a cancelled mortgage undermines these long-standing policies. A cancelled mortgage would never truly be cancelled, as it could be later revived through an extrajudicial act of correction. Third persons would not be able |7to safely rely on the absence of a mortgage from the public records.
The majority believes La.Rev.Stat. § 35:2.1(B), will prevent this sort of harm by providing an act of correction shall not prejudice the rights of third persons who reasonably relied on the original act. This provision, however, does not truly cure the practical difficulties which could arise as result of the Court’s decision. For example, a buyer purchases property, relying on the absence of a mortgage from the public records. Later, a mortgagee executes an act of correction reinstating a mortgage on the property. While La.Rev.Stat. § 35:2.1(B) may extricate the buyer from this situation, the buyer could still waste time and resources removing this blight from his title. Alternatively, consider if a bank loans money to a borrower on the basis of clear title on his property, and a mortgage is suddenly reinstated on his property through an act of correction. *962 This is the very type of harm the Public Records Doctrine was meant to prevent.
Further, even considering La.Rev.Stat. § 35:2.1 (B), real estate transactions would be plagued by uncertainty, as parties could not reasonably rely on the absence of an instrument from the public records. The majority does not address the problems for purchasers, sellers, banks, and title insurance companies, among others, resulting from their decision. Nor does the majority confine its holding to the specific facts of this case, creating a troubling precedent. In my view, the interpretation proposed by the majority is erroneous, as it would lead to absurd and inappropriate consequences affecting countless parties. I cannot believe this is the result the Legislature intended or that is required by the law. I therefore respectfully dissent.

. One proposed uses of the initial statute was to permit correction where a property description referred to a "previous acquisition in identifying the property,” but there was "a transposition of numbers and instead of the reference reading as Lot A of Block 1, there might be Lot 1 of Block A." Senate Comm, on Judiciary A: Minutes of Meeting of May 24, 1984 (testimony of Frank McGee).

. While La.Rev.Stat. § 24:177(E)(3) provides committee minutes "shall not constitute proof or indicia of legislative intent,” I include Rep. Gaudin's comments to further underscore the majority’s interpretation of the statute is without support.

.Case law prior to La.Rev.Stat. § 35:2.1 generally involved acts of correction to instruments in the public records. See, e.g., Buras Ice Factory v. Dep't of Highways, 235 La. 158, 170-71, 103 So.2d 74, 78-79 (1957); Harvey v. Richard, 200 La. 97, 111-12, 7 So.2d 674, 679 (1942) (Rogers, J., dissenting); Thibodaux v. Burns, 340 So.2d 335, 336 (La. Ct.App. 1 Cir. 1976).