JOHNSON, Justice.*
11 This case arises out of a dispute involving royalty payments due under a mineral lease held by applicants, Cimarex Energy Co., Ceniarth, Ltd., Palace Exploration Co., and RZ, Inc. (hereinafter “Cimarex”). Alleging that there were competing claims to the royalty payments, Cimarex invoked a concursus proceeding and deposited the funds into the registry of the court. We granted this writ application primarily to review the lower courts’ rulings that Cima-rex had no reasonable basis to invoke a concursus proceeding in this case, and thereby unreasonably withheld royalty payments due to respondents, Orange River Royalties, L.L.P., Mission Royalty Quest, LLC, Fort Worth Operating Company, L.L.C., Richard Martter, and Coyote Ventures, Ltd. (hereinafter “Orange River”).
Applying the law to the facts of this case, we find that the court of appeal erred in affirming the trial court’s ruling in favor of Orange River on its reconventional demand, awarding statutory damages under La. R.S. 31:212.21 et seq. Specifically, 12we find that the court of appeal erred when it concluded that Cimarex had no reasonable basis to invoke the concursus proceeding.
For the following reasons, we therefore reverse the decision of the court of appeal.
FACTS AND PROCEDURAL HISTORY
The royalties at issue arise from a mineral lease between defendants, Katherine D. Mauboules, et al. (“Mauboules Family”) and Cimarex. Various members of the Mauboules family own a tract of land in Vermillion Parish, Louisiana. In October of 1997, the Mauboules sold certain royalty interests in their land to Ereunao Oil & Gas, Inc. (“Ereunao”) via five royalty deeds, all dated October 16, 1997.[1] Ereu-nao subsequently assigned portions of its mineral interest to numerous entities.
The deeds executed between the Mau-boules and Ereunao provided for a three-year prescriptive period for non-use. However, the deeds also included a prescription interruption clause which allowed off-premise production to maintain the entire royalty. The clause expressly provided:
*934 It is expressly understood and agreed that an interruption of prescription resulting from unit production shall extend to the entirety of the aforedescribed tract or tracts of land regardless of the location of the well or of whether all or only part of the aforedescribed tract or tracts of land in included in a unit or units.
On November 14, 2001, the Mauboules’ attorney, Kenneth Privat, sent a letter to Ereunao noting that the deeds had a three-year prescriptive period and thus had prescribed on October 16, 2000. Pri-vat asked for a recordable instrument evidencing the extinction of the deeds. On November 20, 2001, Charles M. Fife, Jr., President of Ereunao, responded to Pri-vat’s letter, noting that although the deeds had a three-year prescriptive period, the deeds also included the prescription interruption .¡clause relative to off-site production.[2] Fife further stated in his letter: “Frankly, I did not realize the above clause was in these royalty deeds until recently. A member of my staff who prepares our royalty deeds advised me that he had inserted the clause as our information about the Key Production drilling program for this prospect was somewhat uncertain respecting its time frame for completion. Usually our royalty deeds have a three year term and do not include the above clause.”
In 2002, Key Production Company, predecessor to Cimarex, became interested in drilling on the Mauboules property, and contacted Privat to discuss and negotiate a lease. On May 29, 2002, an agent for Key Production sent a letter to Privat, extending an initial offer. Negotiations were difficult and continued over a two-year period, primarily due to Privat’s assertions that the prescription interruption clause had been wrongfully inserted into the royalty deeds, possibly as a result of fraud, and that the royalty interests of Ereunao and the interests of its successors had therefore prescribed, and the royalty rights had reverted back to the Mauboules family.
On December 26, 2002, Cimarex continued the negotiations for the lease by making a revised offer to the Mauboules through Privat. In addition to stating the lease terms and price per acre, the offer included additional consideration: if the Mauboules pursued a cause of action against Ereunao, Cimarex would agree to pay up to $7,500 of legal expenses associated with that action incurred during the next twelve month period; and if that cause of action was pursued, but failed, Cimarex would agree to pay a cash bonus of $75,000 to the Mauboules upon 150% payout of the well.
The lease between Cimarex and the Mauboules Family was eventually | ^executed on February 10, 2003.[3] The lease contained the following miscellaneous provisions, summarized below:
In the event that the well is successful to the extent that the well reaches 150.00% payout, then the Mauboules shall be entitled to a one-time payment of $75,000.00, provided that the following has occurred:
1. At the time of payout, the Mau-boules’ royalty interest, which was *935 conveyed unto Ereunao, remains outstanding;
2. That the well reaches 150.00% payout; [4]
The Lease Purchase Report between the Mauboules and Cimarex, dated April 10, 2003, included the following note:
In the event that our well is successful, Lessor’s attorney, Kenny Privat, will file suit against a royalty purchaser known as Ereunao Oil & Gas, Inc., et al.
Kenny Privat contends that representatives of this company altered Royalty Deeds after being approved by him; and further, misled the Royalty Owners as to what portion of the tract that they were actually selling.
The purpose of this suit will be to reduce the extent of the royalty deeds to cover only that portion of the leased premises situated within the confines of the Bourque unit, in lieu of the entirety of the tract.
A $7,500.00 cash payment was deemed appropriate in order to offset future legal expenses incurred by the Suit.
Further, this Agreement was evidenced by that certain unrecorded Letter Agreement dated December 26, 2002 by and between Cimarex and Kenny Privat; a copy of which is included herein.
This royalty interest will then be placed in suspense until final determination rendered by the Court.
IfiCimarex drilled a successful well and began production in January of 2004.[5] On March 26, 2004, Privat sent a letter to Cimarex stating that the Mauboules were asserting that the royalty interests deeded to Ereunao had prescribed based on the three-year prescriptive period, and asking Cimarex to place the disputed royalties in suspense until a determination on this issue could be obtained from the courts. Cimarex forwarded the letter to its attorney, James Williams, who then contacted Privat. During a phone call with Privat, Williams learned that Privat was asserting that the off-tract production clause was ineffective because it had been inserted into the royalty deeds either fraudulently or under circumstances tantamount to fraud. Privat stated that he would have the clause declared invalid on the basis of fraud and that the royalty interests at issue had therefore reverted to the members of the Mauboules family.
After receiving Privat’s letter, and his phone conversation with Privat, Williams advised Cimarex that the Mauboules were *936 asserting an adverse claim to that of Ereu-nao and its assigns, and he advised Cima-rex to suspend royalty payments attributable to the disputed royalty interests pending resolution of the adverse claim.
On April 23, 2004, Williams sent a letter to Privat memorializing their conversation, and confirming that the Mauboules were contending that the provision in the royalty deeds relative to off-tract production was inserted into the deeds “in |fiwhat amounts to fraud on the part of the vend-ee,” and that the Mauboules claimed that the term of the mineral royalty interest expired and they were entitled to 100% of the mineral royalty interest. Williams further stated that, viewing the matter strictly on the basis of the public records, Cimarex would be entitled to rely on the provisions in the royalty deeds. However, he noted that the assertion that the provision was “slipped in” unbeknownst to the Mauboules raised doubt as to the efficacy of the disputed provision to question whether the royalty interests survived. Thus, Williams stated that he advised Ci-marex to suspend payment of proceeds until the dispute between the Mauboules and Ereunao and its vendees could be resolved. Beginning in April of 2004, the Orange River Group (“Orange River”), a group of individuals and businesses who purchase mineral royalty interests for the purpose of investment and re-sale in the producing mineral royalties market,[6] purchased shares of outstanding mineral royalties in the Mauboules’ land from assignees of Ereunao.[7]
On June 9, 2004, Cimarex advised Orange River of the Mauboules’ adverse claim to the royalty interests, and further advised that Cimarex would be suspending the royalty payments. In August of 2004, Williams advised Cimarex that it would be necessary to file a concursus proceeding, and he received the authorization to do so. However, according to Williams, Orange River’s attorney, Kerry Kilburn, asked him to delay the filing.
On November 16, 2004, Kilburn made written demand for payment on behalf 17of Orange River to Cimarex pursuant to La. R.S. 31:212.21.[8] In his letter, Kilburn noted that Orange River was a “good faith purchase[r] relying on the public record for the validity of [its] title and there can be no reasonable claim against [Orange River] by the Mauboules Family members.” Cimarex received this notice on November 18, 2004. Williams, on behalf of Cimarex, responded to the demand for payment on December 2, 2004. Williams provided a written explanation of why the revenues attributable to the mineral royalty interest claimed by Orange River would be held in suspense and would be deposited into the registry of the court in conjunction with a concursus proceeding. Williams explained that because Orange River’s interests were derived from Ereunao, which had acquired prescriptable mineral royalty interests from the Mauboules, and the Mauboules asserted that those interests acquired by *937 Ereunao had indeed terminated by prescription, the public records doctrine would likely not vest an interest to Orange River which them vendors had no legal right to convey.
After receipt of Orange River’s demand, Williams advised Cimarex to deposit the disputed royalty proceeds into the registry of the Court and to file a concursus. On December 20, 2004, Cimarex filed the con-cursus proceeding which forms the underlying basis of this writ application. Orange River was named as a defendant in the concursus, along with the Mauboules, Ereunao, and Ereunao’s assigns.[9] The Mauboules answered the concursus, admitted to the existence of a controversy concerning entitlement to the disputed funds, and sought to be recognized as the Downers of the mineral royalty interests. The Mauboules did not specifically assert fraud in them answers. Orange River reconvened, seeking unpaid oil and gas royalties and penalties pursuant to La. R.S. 31:212.21, et aeq.
Orange River subsequently filed a Motion for Summary Judgment, asking the Court to recognize their ownership of the mineral royalty interest at issue, and to award them all unpaid royalties allocable to such interest. In its opposition to the summary judgment, the Mauboules asserted that ‘‘the royalty deeds contain error that concerns the Mauboules principal cause of said contracts, and the error may have been induced by fraud.” The Mau-boules further stated that they had not yet had the opportunity to' conduct discovery or depose Ereunao, and thus they could not yet prove that the error was induced by fraud.
On August 22, 2005, the Court granted summary judgment in favor of Orange River, recognizing Orange River as the owners of a certain undivided mineral royalty interest in the land at issue, and ordered the Clerk of Court to release the funds representing owed royalties.[10]
Following a bench trial on Orange River’s reconventional demand, the trial court found that Cimarex’s reliance on the oral assertion of fraud by Privat was an unreasonable basis to suspend royalty payments, and thus Orange River was entitled to statutory penalties. The trial court entered judgment awarding statutory penalties pursuant to La. R.S. 31:212.23(C),[11] *938 calculated as the amount of royalties due, plus | ntwo times that amount, plus judicial interest beginning on the date royalties were due.[12] The trial court denied any further compensatory damages, finding no support for a claim for damages outside the scope of La. R.S. 31:212.23(0. Additionally, the trial court, while finding Ci-marex’s conduct in failing to timely pay the royalties to be unreasonable, also found that Cimarex’s conduct did not rise to a level which would trigger exemplary damages, even if authorized in law.
The court of appeal affirmed the trial court’s finding that Cimarex’s actions were unreasonable. The court found that Cima-rex had no legitimate basis for initiating the concursus, and that it was merely orchestrated as a condition to the Mau-boules granting the lease to Cimarex. The court also suggested that, given the history of the Mauboules’ claim, the agreement Cimarex made with the Mauboules to obtain the lease violated the “clean hands doctrine.” The court further found that Cimarex did not show how the Mauboules’ assertions could present a claim that would challenge, much less defeat, Orange River’s royalty interest and the public records doctrine. The court reasoned that to file a valid concursus, Cimarex needed to show that the Mauboules had a competing claim against Orange River. But, the Orange River claim was fully supported by the public records and public records doctrine. Thus, while the Mauboules may have a claim against Ereunao for fraud, the Mau-boules had no claim to the funds due Orange River. Finally, because the | inconcursus was improperly invoked, the court held that Cimarex was not entitled to immunity for depositing the funds into the registry of the court, and the action of depositing the funds did not constitute payment of the royalties due under the mineral code.
The court of appeal upheld the trial court’s calculation of damages and interest. The court agreed that the proper calculation of damages under the statute was doubling the amount of royalties that were due, and adding this amount to the amount of unpaid royalties. The court also agreed that interest on the damages began to accrue on the date of judicial demand, not the date of judgment.
Cimarex (along with Ceniarth, Palace and Zeneco) applied for supervisory writs in this Court, which were granted.[13]

DISCUSSION

Our decision addresses whether Cima-rex properly invoked the concursus proceeding. Specifically, we examine whether the Mauboules’ assertions relative to the Ereunao deeds constituted a competing claim, and whether Cimarex, as a stakeholder, was required to determine the merits of the competing claim prior to invoking the concursus.
Prior to its codification, concursus developed through jurisprudence as an equitable remedy.[14] In 1922, the legislature officially enacted Act 123, providing for the concursus proceeding. This Act authorized one who held money, claimed by two *939 or more persons, or upon which two or more persons claimed a lien or privilege, to deposit the money in the registry of the court, and to cite all claimants to litigate over Inthe fund. La. Acts 1922, No. 123; American Surety Co. of New York v. Brim, 175 La. 959, 144 So. 727 (La.1932). The Act further provided that the depositor was relieved of any liability to the persons cited, and provided the manner in which the deposit should be made and the manner for citing the persons who had an interest in the money. La. Acts 1922, No. 123. The Act was passed in order to avoid a multiplicity of suits and actions, and contemplated a proceeding leading to one judgment, which finally adjudicated all the issues between all the parties. Amerada Petroleum Corp. v. State Mineral Board, 203 La. 473, 485, 14 So.2d 61, 65 (La.1943); Hennington v. Petroleum Heat & Power Co. of Louisiana, 194 La. 188, 196-197, 193 So. 583, 586 (La.1940).
The Act was incorporated into La. R.S. 13:4811 et seq. La. R.S. 13:4811 was amended and reenacted by La. Acts 1954, No. 523 to provide:
Whenever any person, firm, partnership, corporation, or association of persons is in possession of any money, which is claimed by two or more persons, or upon which two or more persons are claiming a lien and privilege, then such person, firm, partnership, corporation or association of persons holding the money, may deposit it in the registry of the district court having jurisdiction of the domicile of one or more of the claimants thereto, and shall thereafter be relieved of all liability for the payment of the money on complying with the requirements set out in R.S. 13:4811 through 13:4817; provided, however, that if said money is due, or claimed to be due, on account of any sale, lease or other transaction affecting or pertaining to immovable property or any character of interest therein, such deposit shall be made in the Registry of the district court having jurisdiction of the Parish wherein said immovable property is situation, or, if said property be situated in more than one Parish, then in the Registry of any district court having jurisdiction over any Parish wherein a part of said immovable property is situated.
This statute was a codification of the common-law interpleader, and imposed numerous restrictions on the use of concursus, primarily restricting its use to a stakeholder who would deposit funds into the registry of the court. Sarpy, supra at 534; Damson Oil Corp. v. Sarver, 346 So.2d 1304, 1306 (La.App. 3 Cir.1977).
112In 1960, the legislature adopted the Louisiana Code of Civil Procedure. In this process, it repealed La. R.S. 13:4811 et seq. and enacted Title X, relative to con-cursus proceedings, broadening the application of the concursus proceeding. The law governing concursus is set forth in La. C.C.P. arts. 4651 through 4662. The introduction to Title X provides that these articles: (1) codify those jurisprudential rules on concursus procedure which have been found to be useful and workable; (2) broaden the base of the procedural remedy by borrowing some of the broad and flexible principles of federal interpleader; (3) provide workable substitutes for two of the prior rules which experience has proven to be unworkable; and (4) provide, so far as practicable, a single set of rules to govern concursus procedure regardless of the use to which it may be put.
The Code of Civil Procedure defines a concursus proceeding as “one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded and required to assert their respective claims contradictorily against all *940 other parties to the proceeding.” La. C.C.P. art. 4651. The Code of Civil Procedure further provides a rule relative to claimants that can be impleaded:
Persons having competing or conflicting claims may be impleaded in a concursus proceeding even though the person against whom the claims are asserted denies liability in whole or in part to any or all of the claimants, and whether or not their claims, or the titles on which the claims depend, have a common origin, or are identical or independent of each other.
No claimant may be impleaded in a con-cursus proceeding whose claim has been prosecuted to judgment. No person claiming damages for wrongful death or for physical injuries may be impleaded in a concursus proceeding, except by a casualty insurer which admits liability for the full amount of the insurance coverage, and has deposited this sum into the registry of the court.
La. C.C.P. art. 4652. In enacting this article, the legislature removed the | ^jurisprudential limitations placed on con-cursus when La. Act 123 of 1922 introduced the concept of interpleader. Further, the language of the first paragraph is based on Federal Rule of Civil Procedure 22(1), which combines interpleader with the bill in the nature of interpleader and removes the former limitations and restrictions on the use of the remedy.[15] Comment, La. C.C.P. art. 4652; Sewerage & Water Board of New Orleans v. Sanders, 289 So.2d 414 (La.App. 4 Cir.1970).
The primary purpose of the concur-sus proceeding is to protect a stakeholder “from multiple liability from conflicting claims and from vexation attending involvement in multiple litigation in which stakeholder may have no direct interest.” Landry & Passman Realty, Inc. v. Beadle, Swartwood, Wall & Associates, Inc., 303 So.2d 761, 763 (La.App. 1 Cir.1974); see also Rehabilitation Concepts Plus, Inc. v. Wills, 42,400 (La.App. 2 Cir. 10/10/07), 968 So.2d 262, 264; Marquez v. Progressive Ins. Co., 2006-1024 (La.App. 3 Cir. 12/6/06), 944 So.2d 876, 878-879. This Court has noted that concursus can be used not only to prevent multiple liability, but also to prevent multiple litigation, and therefore can be used by a person against whom multiple claims are asserted, even though liability on some or even all of the claims is denied. Louisiana Intrastate Gas Corp. v. Muller, 290 So.2d 888, 895 (La.1974); see also Comment, La. C.C.P. art. 4562. Furthermore, the language of Code of Civil Procedure article 4652 also provides that use of the concursus proceeding is allowed even if the stakeholder denies liability owed to one or all of the claimants.
Like the concursus proceeding, federal interpleader was designed to protect the stakeholder. 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1702, at 533 (2001). This protection prevents a stakeholder from having to determine, at his | nperil, which claimant has the better claim. Id. at 534. And, even if the stakeholder denies liability to one or more of the claimants, he is still protected from having to defend multiple suits. Id.
Given the background and purpose of concursus and interpleader, we find that *941 the concursus proceeding was properly invoked in this case.

Contentions of Applicants and Respondents 
[16]

Cimarex
In short, Cimarex argues that because there were competing claims to the same royalty payments, the concursus was justified. Concursus is properly used as a way for a stakeholder to avoid multiple litigation as well as potential liability. Thus, by depositing the amount of the royalty payments due into the registry of the court, Cimarex should have been relieved of any further liability to the “winning” claimant. Cimarex further argues that a stakeholder should not have to do its own evaluation of the competing claims to decide which have merit before filing a concursus. Concur-sus law protects stakeholders from liability by putting the burden on the competing claimants, not the stakeholder, to prove the merits of their competing claims, and further protects stakeholders by putting the task of determining which of the claims is entitled to the disputed proceeds in the hands of the court. Without instituting a legal proceeding, there was no way for Cimarex, or its attorney, to investigate the Mauboules’ claim. Had Cimarex simply paid Orange River, Cimarex would have risked future litigation, whether ultimately successful or not — the exact situation that concursus is designed to prevent.
Further, Cimarex disputes Orange River’s contention that the Mauboules never 115made an adverse claim and have never asserted fraud. Cimarex points to the preconcursus correspondence between Pri-vat and Cimarex, as well as the Mauboules’ opposition to Orange River’s motion for summary judgment, in which the Mau-boules argue why the issue of error/fraud as to the principal cause of the royalty deeds precluded a judgment awarding the disputed royalties to Orange River. Cima-rex points out that there were no factual findings by the trial court that its conduct was a result of fraud, deceit, unconsciona-bility or bad faith. Orange River’s argument that Cimarex’s conduct was egregious is not based on any factual finding by the trial court.
Once the court accepted the deposit of funds from Cimarex, Cimarex lost control of those funds, and could not have made payment directly to any claimant without direction from the court. Cimarex argues that, pursuant to La. C.C.P. art. 4658, because it made payment of the disputed funds into the registry of the court, it should have been insulated from statutory penalties based on an alleged failure to pay in response to statutory notice.
Orange River
Orange River argues that the unique facts and circumstances of this case do not require this Court to pronounce a new rule regarding whether concursus is always a reasonable response by a royalty payor to competing claims. Orange River asserts that there was never a true “adverse claim” to justify the suspension of royalties, and that the suspension of royalty payments was prefabricated. The “adverse claim” was only pretext for doing what Cimarex was required to do under its deal with the Mauboules. There was never a bona fide dispute as to Orange River’s ownership of the royalty interests and right to payment.
Orange River argues that it was entitled to rely on the prescription interruption 11 r,clause in the Ereunao deeds to keep its *942 interests alive, even if it was fraudulently-inserted, because the deeds were recorded in the public records. The Mauboules took no action to pursue Ereunao, and there was no claim by the Mauboules of record. Further, the Mauboules have never asserted a claim for fraud, or made any claim that could be construed as competing or conflicting to the interests acquired by Orange River.

Analysis

First, we reject Orange River’s assertion that there was no true competing claim made by the Mauboules. The language of Article 4652 allows persons “having competing or conflicting claims” to be impleaded into a concursus proceeding. There is no requirement in the article that claims must be made in a specific format, or with any formality. The Mauboules’ written assertions that the Ereunao deeds had prescribed, and the verbal allegations of fraud against Ereunao were sufficient to constitute a competing claim to the royalty proceeds at issue. We find that Cimarex was reasonable in relying on the assertions by the Mauboules that they were entitled to the royalty proceeds. The assertions made by the Mauboules involved more than a mere possibility that a competing claim may be asserted. There was a positive assertion by the Mauboules that they were entitled to the royalty proceeds, whether or not a written assertion of fraud was ever made. Moreover, once the con-cursus was filed, the Mauboules did not disclaim any interest in the royalty proceeds. The Mauboules answered the petitions; claiming ownership of the disputed royalties, and additionally opposed Orange River’s motion for summary judgment, specifically laying out the basis for their claim, and stating that fraud was certainly a possibility, pending further discovery.
Secondly, we hold that Cimarex had no duty to definitively determine whether |i7the Mauboules had any chance of success in pursuing its claim. The use of concursus is not dependent on the merits of the adverse claim. Obviously, in almost all concursus proceedings, the claim of one of the parties will ultimately be found to be invalid. Even if Orange River was correct that its rights were protected by the public records doctrine, it was not the obligation of Cimarex, as the stakeholder, to reach that legal conclusion.
The court of appeal compared this case to its earlier decision in Bank of Sunset & Trust Co. v. A.J. Charlot, 614 So.2d 1386 (La.App. 3 Cir.1993). That case is factually dissimilar. The specific issue addressed in Bank of Sunset was whether service of a Kentucky judgment for spousal support on a Louisiana bank, not made executory in Louisiana, along with a copy of a foreign court order purporting to garnish the bank account of one of the bank’s account holders, was sufficient to allow the bank to invoke a concursus proceeding to determine to whom the bank should pay the funds. Bank of Sunset, 614 So.2d at 1387. The trial court dismissed the concursus, finding that the non-executory order of garnishment and its attached judgment did not present the bank with a competing claim. Id. In affirming the trial court’s ruling, the court of appeal noted that the only method for enforcement of an out-of-state judgment was by ordinary action in Louisiana with citation and service, and thus the papers served on the bank had no legal efficacy in Louisiana. Id. at 1389. Therefore, on their face, the documents did not show a competing claim. Id. Furthermore, the court reasoned that garnishment procedures were governed by particular Code of Civil Procedure articles, none of which were followed. Id. Moreover, the proper procedure for notice of this type of dispute was governed by a particular banking statute, which provided that the *943 bank was not required to recognize the adverse claim unless the notice followed the particular statutory procedure. | ^Because the papers presented to the bank followed none of the required procedures for notice of an adverse claim or garnishment, the court found that a competing claim had not been presented. Id. at 1390.
In this case, there were no specialized statutes requiring a particular form or procedure for the Mauboules to assert a competing claim to the royalty payments. There was no specialized statute giving Cimarex protection if it decided not to recognize the Mauboules’ claim. The Mauboules asserted that they were entitled to the royalties because the Ereunao deeds had prescribed. The Mauboules asserted that the prescription interruption clause was inserted into the deeds without their knowledge, possibly as a result of fraud. Thus, because the deeds were prescribed, the Mauboules’ assert that Ereu-nao and its assigns had no right to convey any interest to Orange River. We find that these assertions presented a competing claim sufficient to allow Cimarex to invoke a concursus.
The court of appeal based its decision on the merits of the Mauboules’ claim, reasoning that it .could not defeat the protections of the public records doctrine. The Louisiana Public Records doctrine generally expresses a public policy that interest in real estate must be recorded in order to affect third persons. Simply put, an instrument in writing affecting immovable property which is not recorded is null and void except between the parties. See Peter S. Title, Louisiana Real Estate Transactions, § 8.1 (2009). The public records doctrine is founded upon our public policy and social purpose of assuring stability of land titles. Camel v. Waller, 526 So.2d 1086, 1089 (La.1988). At the time the Cimarex lease was recorded, the public records doctrine was generally set forth in La. C.C. art. 1839,[17] La. R.S. 9:2721[18] and [199:2756.[19] Louisiana law relative to registry was restated and revised by the legislature in 2005 by Act 169. La. R.S. 9:2721 and 9:2756, which provided for the lack of effect of unrecorded instruments as against third parties, was repealed.
The public records doctrine is now generally set forth in La. C.C. art. 3338, which provides:
*944 The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
(1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
(2) The lease of an immovable.
(3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.
(5) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.
The public records doctrine has been described as a negative doctrine because it does not create rights, but, rather, denies the effect of certain rights unless they are | ^recorded. Title, supra at § 8.16; Camel, 526 So.2d at 1089-1090; Phillips v. Parker, 483 So.2d 972, 975 (La.1986). In explaining the negative nature of the doctrine, this Court has stated that third persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded. Camel, 526 So.2d at 1090 [citing Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tul. L.Rev. 491 (1965) ]. The primary focus of the public records doctrine is the protection of third persons against unrecorded interests. Camel, 526 So.2d at 1090; Phillips, 483 So.2d at 976.
Because recordation is not the source of legal rights, Orange River can not simply rely on, and only look to, the public records doctrine to support its position that the Mauboules’ claim was not a competing claim for purposes of concursus. While a third party is entitled to rely on the absence from the public record of those interests that are required to be recorded, the public records doctrine does not provide that a third party may rely implicitly on what is shown in a recorded instrument, nor does it provide that a third party who relies on a recorded instrument can acquire good title from a vendor who does not have good title. Redmann, supra at 500 [citing Succession of Rosinski, 158 So.2d 467, 469 (La.App. 3 Cir.1963)]. Regardless of the final resolution of Orange River’s ownership of the royalty interests and its right to the royalty payments, the question of whether the Mauboules’ claims might affect Orange River’s title certainly presented a legitimate basis for Cimarex to fear that Orange River’s position possibly might not be protected by the public records doctrine. Simply put, “the rule that what is not recorded is not effective does not mean that what is recorded is effective at all events, despite forgery or any other defect.” Redmann, supra, at 501. Even though the general protections of the public |21records doctrine indicated that the Mauboules had little chance of success, we decline to put the burden on Cimarex to make that final legal determination. Such a determination is properly placed in the hands of the courts.[20]
Moreover, Orange River’s ownership rights could not be determined simply by looking at the documents filed in the public records. Orange River’s interests are de *945 pendent on the off-tract production clause in the Ereunao deeds. If such production occurred, prescription would be interrupted. However, if there was no such production, then, even under the documents recorded, the interests purchased by Orange River would be nonexistent. Thus, Orange River’s rights are dependent on facts and documents that were not contained in the public records, necessitating a factual inquiry.
Furthermore, by focusing on the merits of the Mauboules’ claim, the court of appeal focused only on the “multiple liability” purpose of concursus, and ignored the “vexatious litigation” purpose. Even assuming that the Mauboules’ claim is tenuous at best, requiring Cimarex to choose which claimant to pay still exposes Cima-rex to the costs and risks of defending multiple suits. We find that Cimarex was justified in its fear that it might be later faced with a suit brought by the Mau-boules, and its use of concursus to avoid such multiple litigation was proper.
We also reject any contention that Cimarex invoked the concursus in bad faith, or violated the “clean hands” doctrine. This Court discussed the “clean hands” doctrine in City of New Orleans v. Levy.
Relative to the latter instance of discriminatory acts referred to above, it is axiomatic that while a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness, and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigants 1 ¡¡¿who come before it as plaintiffs in such controversies. This fundamental principle is expressed in the maxim: ‘He who comes into a court of equity must come with clean hands.’ This doctrine universally affects the entire administration of equity jurisprudence as a system of remedies and remedial rights.
It is likewise fundamental that equity imperatively demands of suitors in its courts fair dealing and righteous conduct with reference to the matters concerning which they seek relief. One who has resorted to injustice, unfairness and unrighteous dealing, which it is the purpose of courts of equity to suppress, will appeal in vain, even though in his wrongdoing he may have kept himself strictly within the law. Manifestly, under this maxim any act which would be condemned and pronounced wrongful by honest and fair-minded men must be held sufficient to make the hands of one who seeks equity unclean.
233 La. 844, 865-866, 98 So.2d 210, 218 (La.1957).
The record does not support a finding that Cimarex violated the clean hands doctrine, or otherwise acted in bad faith, so as to justify the lower courts’ findings that the concursus was improperly invoked. Orange River makes much of the fact that the Mauboules’ claims were known to Ci-marex at the time the lease was signed, and that Cimarex allegedly made an agreement to suspend the payment of royalties in order to obtain the lease. However, we do not find that Cimarex’s actions constituted wrongdoing, nor do we find that its actions prevented the proper invocation of the concursus proceeding. Cimarex admits that it was aware of the Mauboules’ contentions about the Ereunao deeds prior to executing the lease. In fact, it was the existence of these claims that caused Ci-marex to offer additional consideration to obtain the lease. Otherwise, it seems clear that the Mauboules would have had no incentive or reason to enter into any lease on the property. There was no prefabrication of a claim by the Mauboules. The lease itself did not require Cimarex to *946 suspend royalty payments. In our view, the lease purchase report merely notes what would happen once a claim or suit was brought by the Mauboules against Ereunao — the funds would be placed in suspense pending resolution. Admittedly, the Mauboules never filed a suit against Ereunao prior to the concursus in this case. lasHowever, this fact does not alter our decision. Cimarex had no authority to force the Mauboules to bring suit against Ereunao. Once Cimarex was presented with the letter from Privat, and then advised by its attorney to suspend royalty payments and invoke a concursus, it was reasonable for Cimarex to do so. Had Privat never sent a letter, and never spoken to Williams, our result would likely be different. In that situation, Cimarex would only have had a theoretical concern that the Mauboules may come in and assert a claim to the royalty proceeds. Here, Cimarex had more than a theoretical concern that the Mauboules would make a claim to the royalty proceeds. The Mau-boules’ attorney made written assertions that the Mauboules considered the deeds prescribed and asked Cimarex to suspend payment of the funds pending court resolution of this issue. While the word “fraud” was not used in the letter, Privat clearly relayed this theory in his telephone conversation with Williams.

CONCLUSION

Concursus serves important interests by efficiently resolving potential multiple actions in the same lawsuit, thereby conserving judicial and party resources. It also allows a person subject to the possibility of competing claims to avoid the risk of multiple liability that could result from adverse determinations in different courts. The court of appeal erred in imposing a duty on Cimarex to investigate or evaluate the relative strengths and merits of the underlying claims. The imposition of such a duty undermines the purpose of the concursus proceeding. While we do not go so far as to hold that concursus should automatically be granted whenever it is invoked, courts should allow concursus liberally. In this case, the purposes of concursus were duly served.
The lower courts erred in awarding statutory penalties to Orange River pursuant to La. R.S. 31:212.21 et seq. Cimarex received written demand for payment | ^from Orange River on November 18, 2004. Pursuant to La. R.S. 31:212.22,[21] on December 2, 2004, Williams responded to the demand for payment with a written explanation of the Mauboules’ adverse claim, and advising that a concursus would be filed and the disputed funds deposited in the registry of the court. Thus, Cimarex provided a reasonable cause for nonpayment within thirty days, as required by the statute. Furthermore, as we have already determined, the concursus was properly invoked in this case.[22]

DECREE

For these reasons we find that the court of appeal erred in affirming the trial court’s award of statutory damages to *947 Orange River. We hereby reverse the decision of the court of appeal.
REVERSED.
KIMBALL, C.J., participated in oral argument but did not participate in the deliberation of this opinion.
KNOLL, J., dissents and assigns reasons.

Kimball, C.J., participated in oral argument but did not participate in the deliberation of this opinion.

. The Mauboules retained the executive rights, thus retaining the right to grant oil and gas leases over the property.

. The Mauboules assert that the prescription interruption clause was not negotiated, and was inserted into the deeds without their knowledge or consent.

. A Memorandum of Oil, Gas and Mineral Lease was filed in public records on May 6, 2003, recording the lease between the Mau-boules and Cimarex. The Mauboules Lease itself was not filed of record in Vermilion Parish. See La. R.S. 9:2721.1 (repealed by Acts 2005, No. 169) and La. R.S. 44:104.

. 150% payout was defined as having occurred when the value of production, after payment of the lease burdens, is equal to 150% of the cost of drilling, completing, equipping and operating the test well.

. On May 1, 2003, Cimarex, Ceniarth, Ltd. and Palace Exploration Company entered into a Joint Operating Agreement. Cimarex assigned certain undivided working interests in properties, which include the Mauboules Lease, to Ceniarth, Ltd. and Palace. Specifically as to Palace, Cimarex assigned it a 25% working interest in properties which included the Mauboules Lease. Palace assigned to Zeneco, Inc. of Oklahoma (formerly known as RZ, Inc. of Oklahoma) an undivided 1% overriding royalty interest in properties which included the Mauboules Lease. This assignment also provided for an additional undivided 5% working interest after payout. Cimarex, Ceniarth, Palace and RZ are the present owners and of all the undivided working interest in the Mauboules Lease, subject to the joint operating agreement. Pursuant to the joint operating agreement, the Mauboules No. 1 Well was drilled and completed in or around January 2004, and the Mauboules No. 2 Well was drilled and completed in September 2004, and the Mau-boules No. 3 Well was drilled and completed in January 2005. Cimarex is the operator of Mauboules Nos. 1 & 2. Ceniarth, Palace and RZ are the non-operators of Mauboules Nos. 1 & 2.

. The Orange River Group consists of: Orange River Royalties, L.L.P.; Mission Royalty Income 2002-A, L.P.; MRHC, L.L.C.; Charles P. Torrey, Jr.; Royalty Quest, L.L.C.; Richard Martter; Fort Worth Operating Company, L.L.C.; and Coyote Ventures, Ltd.

. Orange River made three different purchases of royalty interests from Ereunao's assignees, Lawrence and Lorena Brock: April 2004, August 2004, and February 2005.

.La. R.S. 31:212.21 provides:
If the owner of a mineral production payment or a royalty owner other than a mineral lessor seeks relief for the failure of a mineral lessee to make timely or proper payment of royalties or the production payment, he must give his obligor written notice of such failure as a prerequisite to a judicial demand for damages.

. The original Petition in Concursus was filed on December 20, 2004. A Restated Petition in Concursus was filed on February 3, 2005 and a Corrected Restated Petition in Concur-sus was filed on March 1, 2005.

. On the same day, the trial court granted Cimarex's Motion to Dismiss Main Demand. In that motion, Cimarex asserted that while it relied on the allegation of fraud by the Mau-boules in invoking the concursus proceeding, the Mauboules’ answers to the petitions for concursus did not allege fraud, as was originally verbally represented to Cimarex. Thus, in the absence of a positive plea of fraud, Cimarex asserted that there was not a sufficient dispute on the face of the public records to justify maintenance of the concursus proceeding. Cimarex sought dismissal of the action without prejudice, to be refiled if fraud was subsequently alleged by the Mauboules.

.La. R.S. 31:212.23 provides:
A. If the obligor pays the royalties or production payments due plus the legal interest applicable from the date payment was due, the owner shall have no further claim with respect to those payments.
B. If the obligor fails to pay within the thirty days from notice but states a reasonable cause for nonpayment, then damages shall be limited to legal interest on the amounts due from the date due.
C. If the obligor fails to pay and fails to state a reasonable cause for failure to pay in response to the notice, the court may award as damages double the amount due, legal interest on that sum from the date due, and a reasonable attorney’s fee regardless of the cause for the original failure to pay.

. A new trial was subsequently granted for the limited purpose of allocating liability, and the trial court entered an amended judgment, specifically setting forth the amount of statutory penalties, interest, and attorneys fees due to each member of the Orange River group.

. Cimarex Energy v. Mauboules, 2009-1170 (La.9/25/09), 18 So.3d 97; Cimarex Energy v. Mauboules, 2009-1180 (La.9/25/09), 18 So.3d 97; Cimarex Energy v. Mauboules, 2009-1194 (La.9/25/09), 18 So.3d 97.

.For a historical look at concursus, see Sar-py, Concursus: Interpleader in Louisiana, Tul. L.Rev. 531 (1961).

. There are two different forms of inter-pleader in the federal courts — statutory in-terpleader and rule interpleader. Rule in-terpleader is based Federal Rule of Civil Procedure 22. In order to invoke inter-pleader pursuant to Rule 22, there must be some other basis of federal subject matter jurisdiction. Statutory interpleader, 28 U.S.C. § 1335, provides for subject matter jurisdiction.

. Because we find that the lower courts erred in awarding damages to Orange River, we need not address the separate arguments set forth by applicants, Palace Exploration Co. and RZ, Inc. regarding their separate liability.

. La. C.C. art. 1839 provides:
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.

. La. R.S. 9:2721 (1965) provided:
No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claim or equities nor other matters outside the public records shall be binding on or affect such third parties.

.La. R.S. 9:2756 (1988) provided:
All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by proper officer.

. We also note that Orange River acquired 25% its interest after it had actual knowledge that Cimarex had suspended royalties based on the Mauboules' claim, and an additional 25% percent interest after the concursus was filed and funds deposited into the registry of the court.

. La. R.S. 31:212.22 provides:
The obligor shall have thirty days after receipt of the required notice within which to pay the royalties or production payments due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the sums due or stating or failing to state a reasonable cause for nonpayment within this period has the following effect.

. Because we reverse the rulings of the lower courts, finding that the concursus was properly invoked, we pretermit discussion of the issues regarding proper calculation of damages pursuant to La. R.S. 31:212.21 et seq. and judicial interest.