| STORMFIELD CAPITAL FUNDING I, LLC | * | NO. 2024-CA-0554 |
|---|---|---|
| | * | COURT OF APPEAL |
| VERSUS | | |
| | * | FOURTH CIRCUIT |
| 1911 MANDEVILLE, LLC AND MAZANT REALTY GROUP, LLC | * | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-02494, DIVISION "I-14"
Honorable Lori Jupiter, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

***JOHNSON, J. CONCURS IN THE RESULT***

Ryan McCabe
McCABE LAW FIRM, LLC
214 Friedrichs Avenue
Metaire, LA 70005

      COUNSEL FOR PLAINTIFF/APPELLANT

Vincent J. Booth
BOOTH & BOOTH, APLC
3300 Grand Route St. John
New Orleans, LA 70119

      COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**JUNE 6, 2025**

This is a mortgage enforcement dispute. Plaintiff/appellant, Stormfield Capital Funding I, LLC ("Stormfield"), appeals the May 14, 2024 judgment of the district court, which denied Stormfield's petition for declaratory judgment and held that "[t]he court is unable to declare that Stormfield Capital Funding I, LLC's mortgage is valid." We affirm.

## FACTS AND PROCEDURAL HISTORY

This case involves a succession property located on Mandeville Street in New Orleans, Louisiana (the "Property"). Stormfield is a lender seeking a judicial determination that its mortgage on the Property is valid. Defendant/appellee, Mazant Realty Group, LLC ("Mazant"), is the borrower on the disputed mortgage.[1] Defendant/appellee, 1911 Mandeville, LLC (the "LLC"), holds a quitclaim deed purporting to convey a partial interest in the Property to the LLC. According to the quitclaim deed, the LLC's sole member is Rosebay West, LLC, whose members, Magdiel Salaberrios and Salina Salaberrios (the "Salaberrioses"), are the Property's next-door neighbors.

---

[1] Mazant has not made an appearance in the lower court and has not filed a brief on appeal.

1

The following facts gave rise to the dispute before us. On November 3, 1978, Joseph Roussel ("Father") and Carmela Roussel ("Mother") purchased the Property. On February 25, 1991, Father died intestate leaving Mother (his surviving spouse) and their seven children as heirs. On September 10, 2002, Mother died testate, leaving her interest in the Property to the seven children. On January 11, 2007, a judgment of possession was rendered in Father's succession, putting the seven children[2] into possession of Father's interest in the Property, subject to Mother's usufruct. The judgment of possession was recorded in the Orleans Parish notarial archives.

On August 24, 2015, one of the seven children, Rickey Roussel ("Rickey"), filed motions in Father's and Mother's successions, and the court signed orders on August 24 and 25, 2015, reopening both successions and appointing Rickey as succession representative. On September 10, 2015, Rickey filed motions in Father's and Mother's successions seeking court authorization to sell the Property. However, at that time, no request was made to vacate the judgment of possession in Father's succession. On October 20, 2015, the court signed orders in both successions, which granted authority to sell the Property. On February 26, 2016, the successions[3] sold the Property to NOLA Restored, LLC ("NOLA Restored"),

---

[2] One of the seven children, Joann Roussel, died after Father, and the judgment of possession placed Joann's daughter into possession of Joann's interest in the Property.

[3] Rickey executed the act of sale as succession representative for Father, Mother, and two of Rickey's deceased brothers, Michael J. Roussel and Dominick A. Roussel, who were among Father's and Mother's seven children.

and on March 10, 2016, the act of sale was recorded in the Orleans Parish conveyance records.

Following this Act of Sale, on April 25, 2016, Rickey, as administrator of Father's succession, filed a "Motion to Implement Prior Court Order Reopening Succession" seeking to vacate the judgment of possession. On May 17, 2016, the court denied the motion. On May 25, 2016, Rickey filed a motion to reconsider, which likewise was denied on June 6, 2016.[4]

On May 27, 2016, NOLA Restored sold the Property to Mazant, and on June 7, 2016, the act of sale was recorded in the Orleans Parish conveyance records. Stormfield's predecessor in interest, Lima One Capital, LLC ("Lima One"), loaned Mazant $148,500 to purchase and renovate the Property, and said loan was secured by a mortgage on the Property. Southern Title, Inc. and/or Commonwealth Land Title Insurance Company issued a policy of title insurance prior to the closing.[5] Lima One, however, had no actual knowledge of the 2007 judgment of possession. The title attorneys handling the closing discovered the judgment of possession's recordation but failed to inform Lima One or include it in the title report.

Meanwhile, Mazant's mortgage payments became delinquent, and on May 21, 2018, Lima One brought foreclosure proceedings against Mazant – separate

---

[4] In its arguments to this Court, the LLC surmises that not all heirs were served, which formed the basis for denying these motions. However, the record on appeal does not contain a complete record of the succession proceedings. Subsequently, Rickey filed a "Petition to Confirm Sale by Administrator-Declaratory Judgment with Request for Appointment of Curator Ad Hoc" on November 5, 2020, again seeking to revoke the judgment of possession. On February 5, 2021, Rickey filed motions for preliminary default against three of the heirs, Patricia Roussel, Jules Roussel, and Jose Roussel, but took no steps to confirm the preliminary default.

[5] Stormfield has made a claim against this title insurance policy in connection with the events in litigation.

from this litigation – to enforce its mortgage, though the foreclosure proceedings are not a part of this Court's record.

Throughout this time, the Property fell into disrepair. In April 2020, the Salaberrioses purchased the home next door to the Property. Having become concerned by the state of the Property in proximity to their home, the Salaberrioses obtained a title search and learned of the 2007 judgment of possession. The LLC obtained quitclaim deeds from Rickey individually and as succession representative, and certain other heirs, executed on November 17 and 20 and December 3, 2020, and recorded in the Orleans Parish conveyance records on September 24, 2021. Mazant likewise quitclaimed its interest in the Property to the LLC, and the quitclaim deed was executed on February 4, 2021 and recorded in the Orleans Parish conveyance records on February 5, 2021.

On July 15, 2021, Lima One assigned the mortgage to Stormfield, and the assignment of mortgage was recorded in the Orleans Parish mortgage records on August 18, 2021. Like Lima One, Stormfield did not have actual knowledge of the 2007 judgment of possession.

On March 22, 2022, Stormfield filed a petition for declaratory judgment, naming Mazant and the LLC as defendants and seeking a judgment that Stormfield's mortgage encumbers the entire property or, alternatively, the one-half interest in the Property that is not traced to the judgment of possession in Father's succession. The LLC filed an answer and affirmative defenses to the petition but did not file a reconventional demand or other claims against Stormfield in this

4

litigation. On February 20, 2024, the case proceeded to trial, where the parties introduced all exhibits jointly. Salina Salaberrios testified on behalf of the LLC and was the only live witness. On May 14, 2024, the district court denied the petition for declaratory judgment without reasons, stating in the judgment that it was unable to declare that Stormfield's mortgage was valid.

## LAW AND ANALYSIS

**Assignments of Error**

On appeal, Stormfield raises three assignments of error. In summary, Stormfield argues that the district court erred:

1. in failing to apply La. C.C. art. 2035 to find that Stormfield's mortgage is valid and encumbers the entire property;

2. in failing to apply the prescriptive period in La. R.S. 9:5632(A) to find the LLC's challenge to the mortgage time-barred; and

3. in the alternative, in failing to recognize that the mortgage encumbers Mother's former half interest in the Property.

**Standard of Review and Applicable Principles**

The declaratory judgment action provides a method by which a court may "declare rights, status, and other legal relations whether or not further relief is or could be claimed." La. C.C.P. art. 1871. The action's purpose is to "establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done." *Brady v. Pirner*, 18-0556, p. 8 (La. App. 4 Cir. 12/5/18), 261 So.3d 867, 873 (quotation omitted). On appeal, the scope of review is limited to determining whether the district court abused its discretion in granting or refusing to render a declaratory judgment. *Id.*, 18-0556, p. 10, 261 So.3d at 874.

5

The Louisiana Supreme Court explained the relevant standard of review as follows:

> [T]he decision to grant or deny declaratory relief is left to the wide discretion of the district court. *See Louisiana Supreme Ct. Comm. on Bar Admissions ex rel. Webb v. Roberts*, 2000-2517, p. 3 (La. 2/21/01), 779 So. 2d 726, 728; *Succession of Robinson*, 52,718 (La. App. 2 Cir. 6/26/19), 277 So. 3d 454, 458, *writ denied*, 2019-1195 (La. 10/15/19), 280 So. 3d 613. Although this decision is subject to an abuse of discretion standard of review, the judgment itself is still reviewed under the appropriate standard of review. *Fondel v. Fondel*, 2020-221, p. 4 (La. App. 3 Cir. 3/10/21), 312 So. 3d 1180, 1183, *writ denied*, 2021-0655 (La. 9/27/21), 324 So. 3d 93; *Martin v. Martin*, 52,401, p. 6 (La. App. 2 Cir. 11/14/18), 261 So. 3d 984, 989. Thus, questions of law are reviewed *de novo*, while questions of fact are subject to a manifest-error standard of review. *Fondel*, 2020-221, p. 4, 312 So. 3d at 1183.

*Westlawn Cemeteries, L.L.C. v. Louisiana Cemetery Bd.*, 21-01414, pp. 11-12 (La. 3/25/22), 339 So.3d 548, 558-59. Additionally, when no material facts are in dispute, the appellate court undertakes a *de novo* review to determine whether the lower court's ruling was legally correct. *Brady*, 18-0556, p. 10, 261 So.3d at 874.

**Mortgage Rights**

A mortgage is a nonpossessory right created over property to secure the performance of an obligation. La. C.C. art. 3278. It is an accessory obligation that creates a real right to cause the encumbered property to be seized and sold and to have the proceeds applied toward the satisfaction of the primary obligation. La. C.C. arts. 3279 and 3282. Further, a mortgage is "an indivisible real right that burdens the entirety of the mortgaged property and that follows the property into whatever hands the property may pass." La. C.C. art. 3280.

6

A conventional mortgage is established by written contract. La. C.C. arts. 3284 and 3287. Only a person having the power to alienate the property may establish a conventional mortgage. La. C.C. art. 3290. The right to dispose of property is an attribute of ownership. *See* La. C.C. art. 477. The right to dispose of property includes the right to alienate the property by selling it. *Mardis v. Brantley*, 30,773, p. 10 (La. App. 2 Cir. 8/25/98), 717 So.2d 702, 709; *see also Campbell v. Pasternack Holding Co.*, 625 So.2d 477, 484, n. 13 (La. 1993). However, "[t]he sale of a thing belonging to another does not convey ownership." La. C.C. art. 2452. Courts have generally regarded the sale of property, which is owned by someone other than the purported vendor, as relatively null. *See, e.g., Frey v. Amoco Prod. Co.*, 603 So.2d 166, 177 (La. 1992)(citing *Wright v. Barnes*, 541 So.2d 977, 979 (La. App. 2d Cir. 1989)); *Wood v. Zor, Inc.*, 154 So.2d 632, 635 (La. App. 4th Cir. 1963)(recognizing the after-acquired title doctrine); La. C.C. art. 2452 cmt. (e). *But see Heirs of John Beckwith LLC v. Sims*, 20-0476, p. 26 (La. App. 4 Cir. 3/10/21), 315 So.3d 306, 325 and *J-W Operating Co. v. Olsen*, 48,756, p. 8 (La. App. 2 Cir. 1/15/14), 130 So.3d 1017, 1022 (finding absolute nullity).

**Good Faith**

Stormfield argues that the district court erroneously ignored La. C.C. art. 2035, which, Stormfield claims, bars the LLC's "attack on the mortgage." Under La. C.C. art. 2035:

> Nullity of a contract does not impair the rights acquired through an onerous contract by a third party in good faith. If the contract involves immovable property, the principles of recordation apply to a third person

acquiring an interest in the property whether by onerous or gratuitous title.

According to Stormfield, Article 2035 protects a lender's rights under the mortgage because it obtained the mortgage based on recorded sale orders by the court. Stormfield contends that NOLA Restored acquired the Property by onerous contract and with a full warranty of title; Mazant acquired the Property by onerous contract and with a full warranty of title; Stormfield's predecessor in interest, Lima One, lent Mazant the money to purchase the Property — and acquired its rights under the mortgage in connection with that loan — in good faith and would not have made the loan to Mazant if that loan were not secured by a valid mortgage on the Property; Lima One was provided with a "clean" title insurance commitment and policy that contained no reference to or exclusion of any matters concerning the judgment of possession in Father's succession; and Southern Title, Inc. did not communicate any such issue to either Stormfield or Lima One.

We are unable to find any support in the law for Stormfield's contentions. Its arguments concerning its lack of awareness of the judgment of possession, despite its public recordation, and good faith reliance on recorded orders authorizing sale of the property do not accurately reflect the public records doctrine of this State. The Civil Code explicitly states that "[t]he recordation of an instrument … [d]oes not create a presumption that the instrument is valid or genuine." La. C.C. art. 3341. This Court recently applied the Supreme Court's explanation of the negative nature of the public records doctrine, stating:

> [T]hird persons are not allowed to rely on what is contained in the public records, but can rely on the

absence from the public records of those interests that are required to be recorded. Further, [w]hile a third party is entitled to rely on the absence from the public record of those interests that are required to be recorded, the public records doctrine does not provide that a third party may rely implicitly on what is shown in a recorded instrument. . . . Neither does [the public records doctrine] provide that a third party who relies on a recorded instrument can acquire good title from a vendor who does not have good title. Simply put, the rule that what is not recorded is not effective does not mean that what is recorded is effective at all events, despite forgery or any other defect.

*Breston v. DH Catering, LLC*, 23-0460, pp. 22-23 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 966-67 (quoting *Cimarex Energy Co. v. Mauboules*, 09-1170, p. 20 (La. 4/9/10), 40 So.3d 931, 944)(other internal citations and quotations omitted). We must reject Stormfield's assertion that its reliance on certain, but not all, recorded instruments imbued Stormfield with a valid mortgage encumbering the entire Property. This assignment lacks merit.

**Prescription**

Stormfield argues that the district court erroneously failed to rule that the LLC's claim contesting the mortgage's validity is time-barred. According to Stormfield, the LLC's attack on the mortgage is prescribed because more than two years elapsed since the administrator of Father's succession effected the sale of the Property.

Stormfield refers to the following timeline of events. On January 11, 2007, the judgment of possession was entered in Father's succession. On October 20, 2015, the succession representative obtained court authority to sell the Property and executed an act of sale to NOLA Restored on February 16, 2016. According to

9

the petition, on August 13, 2020, the LLC sent correspondence to lender's counsel, announcing the LLC's intention to intervene in the foreclosure proceeding against Mazant and seek an injunction to stop the Sheriff's sale. Certain heirs of Father and Mother executed a quitclaim deed in favor of the LLC on November 17 and 20 and December 3, 2020, which was recorded in the Orleans Parish conveyance records on September 24, 2021. On February 4, 2021, Mazant quitclaimed its interest in the Property to the LLC, which was recorded on February 5, 2021.

Stormfield's argument relies on La. R.S. 9:5632(A), which states:

> When the legal procedure is defective or does not comply with the requisites of law in the alienation, encumbrance, or lease of movable or immovable property made by a legal representative of a succession, minor, or interdict, provided an order of court has been entered authorizing such alienation, encumbrance, or lease, any action shall be prescribed against by those claiming such defect or lack of compliance after the lapse of two years from the time of making such alienation, encumbrance, or lease.

This statute does not apply to the facts of this case. The plain language contemplates a claim against the "legal representative of a succession, minor, or interdict." The record lacks any claim by a party against Father's succession administrator. Likewise, the LLC has not raised a claim against the succession administrator or against anyone else in this litigation. As the LLC has brought no claim in this litigation, Stormfield has not filed an exception of prescription as would be required under La. C.C.P. art. 927.[6] We have not located any authority,

---

[6] "The objections that may be raised through the peremptory exception include … [p]rescription. . . . [T]he court shall not supply the objection of prescription, which shall be specially pleaded." La. C.C.P. art. 927.

and Stormfield had provided none, that invokes this prescription statute to validate the sale of the Property or enforce the mortgage under the facts of this case. We find this assignment without merit.

**Half Interest in the Property**

Finally, in the alternative, Stormfield argues that the judgment of possession affected only Father's half interest in the Property and not Mother's half interest, such that the mortgage encumbers Mother's half interest. According to Stormfield, the district court erred in finding no valid mortgage over Mother's interest in the Property.

Stormfield's argument overlooks the settled principle that "[a] conventional mortgage may be established only by a person having the power to alienate the property mortgaged." La. C.C. art. 3290. The Supreme Court has long held that "the legal capacity to mortgage must be the same as that to alienate." *Fid. Credit Co. v. Winkle*, 251 La. 1, 19-20, 202 So.2d 280, 286 (1967). This is because, even though a "mortgage does not transfer the title, nor even a dismemberment of it, it nevertheless creates a real right upon the property." *Id.*, 251 La. at 19, 202 So.2d at 286. The right to dispose of, or alienate property by selling it, is an attribute of ownership; however, selling property that belongs to another does not convey ownership. *See* La. C.C. arts. 477 and 2452.

Contrary to Stormfield's suggestion, the district court rendered no judgment in this litigation to "invalidate" the mortgage in its entirety. Stormfield has not prayed for judgment determining the owner of the Property, the district court has

11

made no such ruling, and we will not do so for the first time on appeal.[7]

Nevertheless, the district court could have reasonably concluded from the undisputed record evidence that the act of sale did not convey ownership of the Property to Mazant, so as to imbue Mazant with the right to encumber the Property with a collateral mortgage.

A district court's judgment refusing to render a declaratory judgment is subject to review for an abuse of discretion. *Brady*, 18-0556, p. 10, 261 So.3d at 874. We cannot say the lower court abused its discretion in determining under these particular facts that it could not declare a valid mortgage encumbering the Property. Finding no abuse of discretion, we reject this assignment of error.

## CONCLUSION

Although the district court correctly focuses on the legal deficiencies in Stormfield's claims, this case also underscores important policy concerns related to succession integrity and the public records doctrine. Louisiana's system of succession law is designed to protect the orderly transmission of property and to prevent unauthorized alienation by representatives who lack valid title. La. C.C.P. arts. 3191 *et seq.* Upholding these principles is essential not only for safeguarding

---

[7] This Court recognized with respect to co-owners that "one who owns property in indivision can mortgage his undivided interest in that property" rendering a collateral mortgage over one party's interest enforceable, while ineffective to the extent that the mortgage purported to extend over a former spouse's undivided interest. *McSwain v. Bryant*, 503 So.2d 605, 607 (La. App. 4th Cir. 1987). Here, however, ownership of this disputed Property was not adjudicated below and we do not adjudicate it for the first time on appeal. *See Strategic Cap. Holdings, LLC v. Bennett*, 21-0672, p. 13 (La. App. 4 Cir. 7/29/22), 366 So.3d 255, 263, *as clarified on reh'g* (9/20/22) ("As a general rule, appellate courts will not consider issues raised for the first time on appeal, which were not raised in the pleadings and were not addressed by the trial court.").

heirs' rights but also for preserving confidence in property transactions. *See, e.g., Succession of Schreiber*, 24-60, p. 10 (La. App. 5 Cir. 11/20/24), --- So.3d ----, ----, 2024 WL 4831177, at *6 (recognizing "the legitimate governmental interest of orderly descent and distribution of property, the stability of land titles, and the finality of judgments of possession"). Likewise, the negative nature of the public records doctrine serves a vital gatekeeping function as it prevents reliance on potentially defective recorded instruments unless ownership is properly vested. *Cimarex Energy Co.*, 09-1170, pp. 19-20, 40 So.3d at 944. This protects the integrity of the land title system by ensuring that recorded documents cannot create false assurances of ownership or validity. *See* La. C.C. art. 3341. To allow mortgages or other encumbrances to stand on title chains that disregard recorded judgments of possession would invite circumvention of succession proceedings and erode the reliability of Louisiana's property system. Thus, affirming the district court's refusal to declare Stormfield's mortgage valid is consistent not only with the Civil Code but also with the broader goals of legal certainty and protection of rightful ownership.

Accordingly, for the reasons set forth in this opinion, we affirm the judgment of the district court.

**AFFIRMED**