SUSAN M. CHEHARDY, Chief Judge.
UThis matter began as a mortgage foreclosure by a bank under executory process. After seizure and sale of the property, various creditors asserted that their claims to the proceeds of the sale were superior to the mortgage. The bank appeals a judgment placing the bank’s claim third in line for the sale proceeds. We reverse.
FACTS
On March 20, 1986, George E. Annis (“Annis”) acquired Unit 39-A of Chardonnay Village Condominium, 1500 W. Esplanade Avenue # 3, Kenner, Louisiana 70065 (“the Property”). Annis financed the purchase price of the condominium unit with a note secured by a mortgage in favor of Louisiana Federal Savings Bank, in the amount of $60,000.00. The mortgage was recorded in Jefferson Parish on April 24, 1986.[1] That note is now held by Federal Trust Bank (“FTB”), the undisputed successor in interest to Louisiana Federal Savings Bank.
Annis died intestate on October 24, 2004. This resulted in a default in the monthly payments owed to FTB pursuant to the note and mortgage, as well as a default in *88 the payment of condominium assessments owed to Chardonnay Village Condominium Association, Inc. (“CVCA”).
|sOn January 13, 2005, CVCA recorded in the mortgage records an Association Assessment Lien Affidavit, in which CVCA asserted a privilege on the Property for unpaid monthly and special condominium assessments in the amount of $444.16.[2] The lien affidavit asserted CVCA’s privilege under the Louisiana Condominium Act (La. R.S. 9:1121.101 et seq.) and included CVCA’s Condominium Declaration.
On May 26, 2005, CVCA filed a Petition to Enforce Lien and to Appoint Succession Administrator (“the Chardonnay suit”).[3] CVCA requested recognition of its privilege under the Louisiana Condominium Act. Pursuant to CVCA’s request for appointment of a succession representative, Tracy Glorioso (now Sheppard) (“Sheppard”) was appointed administrator of the succession.
On June 27, 2005, Warren M. Barroner (“Barroner”), another unsecured creditor to the estate of Annis, also filed suit by means of a judicial succession proceeding (“the Barroner suit”).[4] Barroner was appointed Provisional Administrator on June 27, 2005, and Letters of Administration were issued by the Clerk of the 24th Judicial District Court.
On May 16, 2006, Sheppard and CVCA entered into a Consent Judgment in the Chardonnay suit. Athough CVCA’s Petition asserts a privilege pursuant to the Louisiana Condominium Act, the Consent Judgment states that the delinquent condominium assessments, late fees, interest, as well as attorney’s fees incurred by CVCA, shall be paid by the Succession to CVCA as a priority claim under La. C.C. art. 3276. The Consent Judgment was executed by counsel for CVCA and by Sheppard as the court-appointed executor in the Chardonnay suit. The Chardonnay Consent Judgment signed on May 16, 2006, was not recorded in the | ¿mortgage records until after FTB filed the instant action. FTB has never been joined in the Chardonnay suit, and had never made a voluntary appearance therein.
On May 1, 2008, FTB instituted this lawsuit to enforce its note and mortgage by executory process, as a result of the default on monthly payments owed to FTB.[5] FTB alleged the principal amount owing was $33,930.46, with interest thereon at 5.960% per annum from August 01, 2005, until paid.[6] Barroner, the Provision *89 al Administrator in the companion proceeding in the 24th Judicial District Court was originally served. On June 11, 2008, FTB filed a supplemental and amending petition requesting removal of Barroner as the named defendant representing the succession, and substituting Sheppard as Provisional Administrator of the succession of Annis. On May 9, 2008, the Barroner suit was dismissed, and Barroner’s appointment as provisional administrator in the ancillary provisional succession proceeding was nullified.
On May 13, 2008, the trial court in the executory proceeding issued an order directing the sheriff to seize and sell the Property to satisfy the FTB mortgage. A notice of seizure was recorded in the Jefferson Parish mortgage records on May 29, 2008.[7] An amended notice of seizure was recorded on July 31, 2008.[8] CVCA ^subsequently filed its hen on September 30, 2008 after the executory proceeding had been filed, and the Property was under a constructive seizure by FTB.[9]
On October 21, 2008, after the trial court in the executory proceeding had issued an order directing the sheriff to seize and sell the Property to satisfy the FTB mortgage, Sheppard filed an ex parte motion in the Chardonnay suit to recognize her curator fees and expenses in the amount of $13,415.62 as a priority claim against An-nis’s succession. On the same day, the trial court in the Chardonnay suit signed the ex parte order, which stated that Sheppard’s curator fees “are hereby deemed a priority claim and are to be paid as such, prior to the payment of any secured and any unsecured claims from the proceeds of any sale, including, but not limited- to any Sheriffs sale.” That order was recorded on the day it was issued, October 21, 2008.[10]
Both CVCA and Sheppard were notified of the pending judicial sale in this executo-ry proceeding, but neither CVCA nor Sheppard intervened to assert entitlement to the proceeds of the judicial sale in this litigation. The judicial sale was consummated on October 7, 2009, at which time FTB was the winning bidder.
On the following day, however, FTB filed a Motion to Set Aside Sheriffs Sale, on the basis that, at the time of the sheriffs sale, there were issues that had to be resolved, specifically the October 21, 2008 order giving curator fees priority over FTB’s mortgage and the September 30, 2008 recordation of the CVCA lien.[11] On October 14, 2009, the motion to set aside the sheriffs sale was granted.
On April 12, 2010, FTB filed a Rule to Show Cause Why Liens Should Not Be Declared Ineffective as to Immovable Property and Alternatively to Rank Liens to determine the relative ranking of the *90 FTB mortgage in relation to the claims of | f,CVCA and Sheppard. Both CVCA and Sheppard filed memoranda in opposition to FTB’s Rule to Show Cause. Subsequently, both FTB and CVCA filed cross-motions for summary judgment regarding the ranking of the CVCA lien.
In support of its motion for summary judgment, CVCA asserts its lien is a privilege on the assets of the succession in accordance with La. C.C. art. 3276, as debts of the decedent accrued after the succession has been placed under administration. CVCA filed an affidavit stating that since Annis’s death, CVCA has insured the property, has gutted and repaired the property following Hurricane Katrina and Hurricane Isaac, and has maintained the property in a habitable and marketable condition. The affidavit stated further that, during the years following Annis’s death, the monthly condominium assessments and fees that are allocated to insure and maintain Unit 39A and the common areas owned by the condominium owners, have amassed in favor of CVCA and remain unpaid.
In her opposition to the rule to rank, Sheppard asserted that the issuance of the ex parte order in the CVCA litigation affords her a similar privilege under La. C.C. art. 3276, and that her lien should also be paid in preference to the mortgage holder, FTB. She also argued that FTB should be estopped from asserting any preference due to its lack of cooperation with the CVCA litigation.
Both the Rule to Rank and the Cross Motions for Summary Judgment were heard in their entirety on February 19, 2013. The trial court issued a written judgment on March 4, 2013 denying FTB’s Rule to Rank and Motion for Summary Judgment and granted CVCA’s Motion for Summary Judgment, holding that CVCA’s lien primed FTB’s mortgage. The trial court additionally took judicial notice of an ex parte Order in the CVCA proceeding and ranked and awarded Sheppard’s fees as Provisional Administrator before both CVCA’s lien and FTB’s mortgage.
17FTB has taken a suspensive appeal.
ASSIGNMENTS OF ERROR
FTB contends that the trial court erred in finding that the claims of Sheppard and CVCA should be paid out of judicial sale proceeds in preference to the mortgage of FTB. FTB asserts the trial court ignored the Civil Code articles that provide for a mortgage creditor to seize and sell the mortgaged collateral and to have the proceeds applied to its debt in preference to the claims of others. FTB argues it is entitled to enforce its mortgage by execu-tory process outside of the succession proceedings of the deceased mortgagor, and is legally entitled to have the proceeds of the judicial sale applied to its debt in preference to the claims of both Sheppard and CVCA.
FTB further contends it was not a party to the Chardonnay suit, it did not acquiesce to the Consent Judgment, was not given notice, before or after, of the signing of the ex parte Order designating Sheppard’s fees as a priority claim, and it should not therefore be bound by the rulings entered therein. FTB also points out that neither Sheppard or CVCA have intervened in the foreclosure proceeding to assert payment in preference to FTB’s secured position.
FTB argues that the trial court erred in finding that CVCA’s condominium privilege is a priority privilege under Article 3276 of the Louisiana Civil Code. FTB contends that the rank of CVCA’s claim for unpaid condominium assessments is governed by the Louisiana Condominium Act, not by Louisiana Civil Code Article *91 3276. FTB farther argues that, under the canons of statutory interpretation, Louisiana Civil Code Articles 3279 and 3307 supersede the provisions of Article 3276 of the Louisiana Civil Code, as to a mortgage creditor, and that the sanctity of the public records doctrine is in peril were this court to determine otherwise.
| sIn opposition to the appeal, CVCA responds that its privilege outranks FTB’s security interest because CVCA’s succession assessment claims arose after Annis’s death and, therefore, are secured by La. C.C. art. 3276, and that an unrecorded Article 3276 privilege is effective against third parties, so that the public records doctrine is irrelevant. As to FTB’s contention that it was not given adequate notice or opportunity to be heard in the Chardonnay suit, CVCA argues that claim has no merit because FTB was notified repeatedly by mail and by facsimile of the privilege CVCA claimed, and of the pending succession proceedings.[12] CVCA contends that FTB should not profit from allowing CVCA and Sheppard to protect FTB’s collateral to CVCA’s detriment.
Sheppard opposes the appeal by arguing that the fees and costs of an appointed succession representative are protected by the succession privilege of La. C.C. art. 3276, and that the succession privilege outranks a conventional mortgage. FTB responds that Sheppard was a curator appointed in accordance with La. C.C.P. art. 5091, and that CVCA, therefore, owes any fees to Sheppard as the plaintiff who requested the appointment of the curator to represent the estate.
LAW AND ANALYSIS
The essential questions before us are the nature and superiority of a duly-recorded conventional mortgage, the ranking of succession privileges against such a mortgage, and whether the characterization of the debts owed to Sheppard and CVCA as post-death charges against the succession, and, therefore, privileges against a secured creditor that do not require recordation and that may be given preference to FTB’s position, are correct as the trial court ruled.
In support of its arguments, FTB relies on La. C.C. art. 3279, which reads:
| ciMortgage gives the mortgagee, upon failure of the obligor to perform the obligation that the mortgage secures, the right to cause the property to be seized and sold in the manner provided by law and to have the proceeds applied toward the satisfaction of the obligation in preference to the claims of others.
Further, regarding the effect and rank of mortgages, FTB cites La. C.C. art. 3307(3), which reads, “The mortgagee is preferred to the unsecured creditors of the mortgagor and to others whose rights become effective after the mortgage becomes effective as to them.” Neither the death of the mortgagor nor transfer of the mortgaged property impinges upon this right.[13] La. C.C.P. art. 3741 (“[A] conventional mortgage may be enforced without reference to any alienation or transfer of the mortgaged property from the original debtor, and the creditor may cause the property to be seized and sold as though it were still owned by the original debtor and in his possession.”)
Under the Louisiana Public Records doctrine, all written instruments affecting real estate must be recorded in the *92 appropriate public records in order to affect third persons. La. C.C. art. 3338; Cimarex Energy Co. v. Mauboules, 09-1170 (La.4/9/10), 40 So.3d 931. “The public records doctrine is founded upon our public policy and social purpose of assuring stability of land titles.” Id. at 943 (citing Camel v. Waller, 526 So.2d 1086, 1089 (La.1988)).
The proceeds from the FTB Mortgage loan were used to fund the purchase of the property that is the subject of this appeal. It is undisputed that the mortgage lender (FTB’s predecessor) relied upon the absence of any other mortgage, lien or privilege when it made the loan, and recorded its mortgage in the mortgage records of Jefferson Parish on April 24, 1986. It is likewise undisputed that the FTB mortgage is the first ranking mortgage on the subject property. The FTB mortgage was properly recorded over 22 years before the claims of Sheppard or CVCA |inbecame exigent. Under the codal provisions cited above, FTB should, therefore, have been entitled to seize and sell the property by judicial sale, and have the proceeds applied to its debt in preference to any claims against the property not recorded before its lien became effective.
The trial court found, however, that the claims of Sheppard and CVCA primed the mortgage in this case, and, relying on La. C.C. art. 3276, placed a priority privilege upon all the assets of the decedent, moveable or immovable, secured or unsecured. The trial court was in error.
La. C.C. art. 3276 reads:
The charges against a succession, such as funeral charges, law charges, lawyer fees for settling the succession, the thousand dollars secured in certain cases to the surviving spouse or minor heirs of the deceased, and all claims against the succession originating after the death of the person whose succession is under administration, are to be paid before the debts contracted by the deceased person, except as otherwise provided for herein, and they are not required to be recorded.
La. C.C. art. 3276 provides for a privilege, which must be considered for purposes of the order of payment of debts in a succession under administration, and the allocation of succession assets, to the extent available to the payment of those debts. The property in this matter is encumbered with a prior conventional mortgage executed long before the death of Annis, which is entitled by law to enforcement without regard to an administration of his succession. As such, it would be considered an asset of the succession subject to administration only to the extent that the executo-ry seizure and sale of the property might generate proceeds in excess of the indebtedness due on the mortgage held by FTB, at which point the order of payment of debts incurred after the death of the decedent would be dictated by La. C.C. art 3276.
InSpecifically, with regard to the rank of unpaid condominium assessments with regard to other privileges, mortgages and encumbrances, CVCA’s claim is governed by the Louisiana Condominium Act, rather than the general Civil Code articles regarding privileges in a succession proceeding. LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, 1229 (“statutes specifically directed to the matter at issue must prevail as an exception to the statute more general in character.”)
The Louisiana Condominium Act, La. R.S. 9:1123.115 reads, in pertinent part:
A. (1) The association shall have a privilege on a condominium parcel for all unpaid or accelerated sums assessed by the association, any fines or late fees in excess of two hundred fifty dollars, and interest thereon at the rate provided in *93 the condominium declaration or, in the absence thereof, at the legal interest rate. This privilege shall also secure reasonable attorney fees incurred by the association incident to the collection of the assessment or enforcement of the privilege. Further, if the unit owner fails to timely pay the assessments for common elements for a period of three months or more during any eight-month period and notice to the delinquent unit owner is provided as set forth in Paragraph (3) of this Subsection, the association may accelerate the assessment on the common elements for a twelvemonth period and file a privilege for the accelerated sums. Assessments for common elements are those assessments that are collected on a regular basis by the association for routine expenditures associated with the property.
(2) To be preserved, the privilege shall be evidenced by a claim of privilege, signed and verified by affidavit of an officer or agent of the association, and shall be filed for registry in the mortgage records in the parish in which the condominium is located.
[[Image here]]
C. A privilege under this Section is superior to all other liens and encumbrances on a unit except (1) privileges, mortgages, and encumbrances recorded before the recordation of the declaration, (2) privileges, mortgages, and encumbrances on the unit recorded before the recordation of the privilege as provided in Subsection B of this Section ... (Emphasis added).
First, in order to qualify for the priority of La. C.C. art. 3276, the claim must “originate after the death of the person whose succession is under administration.” In this case, CVCA is suing for condominium assessments and dues that originated hawhen Annis purchased the condominium, which are obligations that arose prior to Annis’s death. The fact that CVCA initiated its attempt to collect the debt after his death through the institution of a provisional succession does not change their character, or transform them into obligations owed under La. C.C. art. 3276.
Next, La. C.C. art. 3276 is only applicable “except as otherwise provided for herein,” while La. C.C. art. 3279 and 3307 contain no such limiting language. “When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” La. C.C. art 9. The Civil Code recognized the need for such limitations upon the applicability of La. C.C. art. 3276. To allow otherwise would undermine the public records doctrine and render it meaningless.
Thus, assuming that CVCA has a valid privilege on the property and complied with all provisions of the Louisiana Condominium Act in order to obtain such privilege, its rank is inferior to the FTB mortgage because the FTB mortgage was recorded 19 years before CVCA’s “Association Assessment Lien Affidavit.” The trial court’s grant of summary judgment in CVCA’s favor is hereby reversed.
Turning now to Sheppard’s claim, we find that the trial court has given full effect to an ex parte order rendered in a completely different proceeding, to which FTB was never a party, to place the claims of Sheppard in preference to those of FTB and CVCA. We find that this ruling is in error for the following reasons.
Initially, Sheppard was appointed, in accordance with La. C.C.P. art. 5091, as the succession representative, when CVCA, an unsecured creditor to the estate of Annis, *94 filed suit against the unopened succession. La. C.C.P. art. 5091 reads:
A. The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
11S(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is:
[[Image here]]
(c) Deceased and no succession representative has been appointed.
(2) The action of proceeding is in rem and:
(a) The defendant is dead, no succession representative has been appointed, and his heirs and legatees have not been sent into possession judicially-
[[Image here]]
La. C.C.P. art. 5096 reads, in pertinent part:
The court shall allow the attorney at law appointed to represent a defendant a reasonable fee for his services, which shall be paid by the plaintiff, but shall be taxed as costs of court.
While the record in the Chardonnay case is not before this court on appeal, we take judicial notice of the fact that the original petition in that matter was filed by an unsecured creditor seeking to assert its privilege over the property herein by perfecting a lien against that property in a vacant succession proceeding. As such, Sheppard’s appointment falls squarely within the dictates of La. C.C.P. art. 5091, and compensation for that appointment would be due and owing in accordance with La. C.C.P. art. 5096 from CVCA, the party plaintiff who initiated the request for the appointment. We additionally note that virtually all of the fees accrued by Sheppard arose out of the CVCA proceeding, and were incurred to perfect the privilege and lien of CVCA, not to administer the succession in general.
For these reasons, we reverse the summary judgment in this matter, and order that the mortgage of FTB be ranked first in the pending executory proceeding. Costs of this appeal are assessed equally against CVCA and Sheppard.

REVERSED AND RENDERED.

. MOB 1491, Page 115, Instr. 8618444.

. MOB 4221, Page 45, Instr. 10502628.

. Chardonnay Village Condominium Association, Inc. v. Succession of George E. Annis, 24th Judicial District Court, Parish of Jefferson, No. 620-802.

. Succession of George E. Annis, 24th Judicial District Court, Parish of Jefferson, No. 621-963.

. FTB’s Petition to Enforce Security Interest by Executory Process originally named as defendant "Warren M. Barroner, Provisional Administrator of the Succession of George E. Annis” (see Note 3, above), but later was amended to dismiss Barroner as defendant and replace him as defendant with Tracy Glo-rioso Sheppard, as Administratrix of the Succession of George E. Annis.

.FTB also sought recovery of
all expenses incurred in enforcing the note and mortgage including reasonable attorney's fees not to exceed 20% of the sums due; (c) if/as applicable, such other or additional amounts incurred or advanced for taxes, insurance premiums, special assessments, repairs to and/or maintenance of the property, for the protection, preservation, repair and recovery of the property, for the protection and preservation of the lien of the mortgage, for the protection and preservation of the mortgagee's interest thereunder, and other amounts provided by the mortgage and *89 applicable law, such as late charges, escrow advances for the payment of taxes and insurance, corporate advances, property appraisals, inspection fees, prior attorney fees and expenses, abstract and title charges, NSF charges, attorney fees and expenses, and other charges which plaintiff is permitted to prove by verified petition, verified supplemental petition, or affidavit filed or submitted before distribution by the sheriff of the proceeds of the judicial sale herein; and (d) all law charges, costs, fees and expenses including sheriff’s commission.

. MOB 4373, Page 496, Instr. 10830524.

. MOB 4380, Page 429, Instr. 10841599.

. MOB 4385, Page 921, Instr. 10850297.

. MOB 4388', Page 202, Instr. 10853643.

. According to FTB, the sheriff refused to execute an act of sale or disburse proceeds from the judicial sale, and the sheriff requested that FTB filed to motion to set aside the sale.

. The record shows these notifications were dated November 23, 2005, December 27, 2005, February 26, 2006, and March 10, 2006.

. See also, La. C.C.P. art 2701.