CHEHARDY, C.J.
*661 Plaintiff, SEC Resources, L.L.C., appeals the Twenty-Fourth Judicial District Court's October 19, 2017 judgment granting a preliminary injunction enjoining the judicial sale of property. For the reasons that follow, we affirm this judgment.
FACTUAL AND PROCEDURAL HISTORY
On November 6, 2014, Rebecca Rourke was placed into possession and full ownership of her parents' immovable property, the family home where she was residing, located at 3006 Roberta Street in Metairie, Louisiana ("the property").[1] Her parents had died testate in 2011.
Five days later, on November 11, 2014, Ms. Rourke executed an Act of Cash Sale and sold the property to 3006 Roberta, L.L.C. ("3006 Roberta") for $117,500.00. Debra Dretar, as the manager of 3006 Roberta, executed the sale on the L.L.C.'s behalf. On this same date, and in conjunction with this act of sale, Ms. Dretar executed three other instruments. She executed a Grant of Usufruct, wherein 3006 Roberta granted a usufruct over the property to Ms. Rourke for her lifetime. Ms. Rourke signed this instrument. Ms. Dretar executed a Certificate of Authority to Act for 3006 Roberta, which authorized Ms. Dretar to act on behalf of 3006 Roberta to purchase and mortgage the property. And Ms. Dretar, on behalf of 3006 Roberta, granted a mortgage on the property in favor of SEC Resources, L.L.C. ("SEC") in the amount of $117,500.00, at issue in the instant foreclosure proceedings.
Ms. Dretar passed away on January 18, 2016. Her brother, Kenneth Dretar, is the administrator of her estate and the sole surviving member of 3006 Roberta.
On November 9, 2016, 3006 Roberta sent a Notice to Vacate and Termination of Grant of Usufruct to Ms. Rourke, notifying her that she had defaulted on the terms of the usufruct, the usufruct was cancelled, and she had ten days to vacate the property. This was followed on January 25, 2017 with a Petition and Rule to Show Cause for Order of Eviction with Reservation of Rights, alleging that Ms. Rourke had failed to maintain the property in good repair, to pay property taxes, and to maintain insurance on the property.[2] These eviction proceedings were continued without date.
On May 17, 2017, Ms. Rourke filed a Petition for Declaratory Judgment and Damages, seeking rescission of the act of sale and damages.[3] Ms. Rourke sought rescission *662 of the sale on the bases of lack of capacity to contract, lack of consent due to error, and lack of consent due to fraud. She also sought damages under theories of fraud, conspiracy to commit fraud, conversion, and various other alternatives. In this petition, Ms. Rourke alleged the following.
In the summer of 2014, Ms. Rourke, who is unable to work due to disability and receives Social Security disability benefits as her regular source of income, was experiencing financial difficulties and mental health issues, requiring psychiatric treatment. During this time, Debra Dretar, an acquaintance of Ms. Rourke, began assisting her, picking up her prescriptions and giving her money to pay her past due bills. Around this time, when Ms. Dretar learned that Ms. Rourke would soon be placed into possession and full ownership of the property, Ms. Dretar suggested that Ms. Rourke obtain a reverse mortgage to maintain a steady source of income.
Ms. Rourke, however, did not qualify for a reverse mortgage because she was not yet sixty-two years old.[4] So Ms. Dretar offered to enter into an agreement with Ms. Rourke, in a document drafted by Ms. Dretar entitled Reverse Amortized Loan. This proposed agreement provided that Ms. Rourke would "place" the property "into a limited liability company as designated by Louisiana Housing Program, L.L.C."[5] In exchange, Ms. Dretar would issue monthly payments to Ms. Rourke over ten years in the amount of $800.00 plus 6% annual interest. The agreement further provided that Ms. Rourke would retain use of the property until she chooses to vacate the property or becomes unable to live on her own.
In addition, Ms. Dretar executed a document entitled Affidavit of Usufruct, which purported to grant Ms. Rourke a usufruct over the property for a minimum of ten years and states that Ms. Rourke would continue to own equity in the property in the amount of approximately $110,000.00. Ms. Rourke claims that after the property had been sold to 3006 Roberta, she did not receive any of the sale proceeds, but that Ms. Dretar directed the $117,500.00 to be disbursed to Bayou Triangle Development, Inc., a corporation wholly owned by Kenneth Dretar. Ms. Rourke thereafter sought the monthly payments of $800.00, to which she thought she was entitled. Obtaining each month's payment was always a hassle, and Ms. Rourke claims that, to date, she has received less than $25,000.00 from 3006 Roberta and the Dretars.
On October 4, 2017, a judgment of preliminary default was rendered against 3006 Roberta, L.L.C., Louisiana Housing Program, L.L.C., and Bayou Triangle Development, Inc. A judgment confirming default was rendered on October 10, 2017 in favor of 3006 Roberta only, in which the November 11, 2014 Act of Cash Sale was rescinded and Ms. Rourke's causes of action in tort were reserved.
Meanwhile, 3006 Roberta had defaulted on the mortgage and SEC moved to foreclose on the property, filing a petition for executory process on July 3, 2017, at issue in these proceedings. SEC alleged that it was the holder and owner of a promissory note executed on November 11, 2014 by Debra Dretar, on behalf of 3006 Roberta, payable to SEC in the amount of *663 $117,500.00, and that this note was secured by a mortgage on the property. SEC sought an order of executory process and a writ of seizure and sale of the property.
On July 13, 2017, the writ was issued, the property was seized by the Sheriff of Jefferson Parish, and a sale was set for September 27, 2017. Five days before the sale was set to take place, on September 22, 2017, Ms. Rourke filed a Motion for Leave to File Verified Petition for Intervention and Permanent Injunction, seeking to enjoin the sale of the property. The court granted Ms. Rourke's motion for leave and set a rule to show cause for a preliminary injunction on September 26, 2017. In her petition, Ms. Rourke outlined her claims to regain ownership of the property in the companion proceedings and further alleged that the mortgage 3006 Roberta granted on the property to SEC is a nullity. The sheriff's sale was postponed and, pursuant to a joint motion, the show cause hearing was continued until October 11, 2017. SEC pled the peremptory exceptions of no cause and no right of action, which were referred to the hearing on October 11, 2017.
At the conclusion of this hearing, the court overruled SEC's peremptory exceptions, granted the motion for preliminary injunction, and set the bond amount in accordance with La. C.C.P. art. 3610. The written judgment followed on October 19, 2017 and Ms. Rourke posted bond that day. SEC thereafter devolutively appealed.
ISSUES ON APPEAL
On appeal, SEC assigns two errors:
1) Because the default judgment introduced at the preliminary injunction hearing is legally infirm for all of the reasons urged in SEC's opening brief in No. 17-CA-672, the preliminary injunction, issued in reliance on that judgment, cannot stand.
2) The district court should have denied the preliminary injunction based upon the Public Records Doctrine, which prevents the non-record matters urged by Rourke in support of her ownership claim from affecting the mortgage rights of SEC, a third party to Rourke's facially valid Act of Cash Sale.
DISCUSSION
In SEC's first assignment of error, it presents a legal argument that if the default judgment obtained by Ms. Rourke in 24th Judicial District Court No. 772-238 is invalid-which SEC maintains it is-then the preliminary injunction is likewise invalid.
Ms. Rourke intervened in these proceedings and obtained a preliminary injunction pursuant to the first paragraph of La. C.C.P. art. 1092, which provides:
A third person claiming ownership of, or a mortgage or privilege on, property seized may assert his claim by intervention. If the third person asserts ownership of the seized property, the intervention may be filed at any time prior to the judicial sale of the seized property, and the court may grant him injunctive relief to prevent such sale before an adjudication of his claim of ownership.
As denoted by the use of the permissive "may," granting injunctive relief under La. C.C.P. art. 1092 is discretionary. See La. R.S. 1:3 ; La. C.C.P. art. 5053 ; Ford Motor Credit Co. v. Corbello , 482 So.2d 203, 206 (La. App. 3 Cir. 1986). And our review of the pertinent code articles and jurisprudence suggests that this discretion under La. C.C.P. art. 1092 is not controlled by the provisions generally governing injunctive relief. Cf. Gen. Motors Acceptance Corp. v. Daniels , 377 So.2d 346, 348 (La. 1979) (finding that, pursuant to La. C.C.P. art. 2752, the right of a defendant in a *664 foreclosure proceeding to obtain an injunction under La. C.C.P. art. 2751 is governed by the general requirements governing injunctive relief as set forth in La. C.C.P. art. 3601, et seq. ). Thus, without any controlling factors outside of those contained within the article itself, we find that a trial court is vested with vast discretion when granting injunctive relief under La. C.C.P. art. 1092.
SEC offers no authority for its contention that the preliminary injunction must be vacated because the default judgment is invalid. And we find this position does not comport with the directive of La. C.C.P. art. 1092 that injunctive relief may be granted to prevent a sale of property before a third person's claim of ownership is adjudicated. Here, we have vacated the default judgment. See Rebecca Rourke v. The Estate of Debra Frances Dretar, et al. , 17-672 (La. App. 5 Cir. 5/23/18), 248 So.3d 653, 2018 WL 2325061. As a result, Ms. Rourke's claim of ownership remains to be adjudicated, and injunctive relief is therefore not improper under La. C.C.P. art. 1092. Insofar as SEC argues that vacating the default judgment per se necessitates vacating the preliminary injunction, we conclude this argument is without merit.
In SEC's second assignment of error, it argues that the district court erred in granting Ms. Rourke "a preliminary injunction against the foreclosure because SEC is shielded from [Ms.] Rourke's ownership claims by the Public Records Doctrine."
Louisiana's public records doctrine generally expresses a public policy that interest in real estate must be recorded in order to affect third persons. Cimarex Energy Co. v. Mauboules , 09-1170 (La. 4/9/10), 40 So.3d 931, 943. Simply put, an instrument in writing affecting immovable property which is not recorded is null and void except between the parties. Id. In this sense, the doctrine is a negative doctrine because it does not create rights in a positive sense, but rather, denies the effect of certain rights unless they are recorded. Id. ; see Camel v. Waller , 526 So.2d 1086, 1089-90 (La. 1988). Consequently, third persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded. Cimarex , supra .
SEC argues that because the recorded act of sale between Ms. Rourke and 3006 Roberta reflects that Ms. Rourke received the sale price and that the instrument does not indicate a lack of capacity or consent, the Public Records Doctrine precludes Ms. Rourke from relying on unrecorded alleged defects in the act of sale to attempt to regain ownership of the property unencumbered by SEC's mortgage. Therefore, SEC submits, the district court erred in granting the preliminary injunction.
The purpose of a preliminary injunction is to preserve the status quo during the pendency of further judicial proceedings. Saer v. New Orleans Regional Hosp. Org., 14-856 (La. App. 5 Cir. 3/25/15), 169 So.3d 617, 620. And a trial court enjoys vast discretion in granting injunctive relief under La. C.C.P. art. 1092.
Considering the exceptional facts and circumstances of this case, and particularly considering that we have vacated the default judgment which had set aside the sale from Ms. Rourke to 3006 Roberta, thus making Ms. Rourke's claim of ownership yet to be adjudicated, we cannot find the district court abused its vast discretion in enjoining the foreclosure proceedings to allow Ms. Rourke a reasonable amount of time to pursue her efforts to regain ownership of the property. Accordingly, at this preliminary stage of these proceedings, we decline to consider SEC's argument that *665 the Public Records Doctrine shields SEC from Ms. Rourke's claim of ownership, and hereby reserve SEC's right to assert its Public Records Doctrine defense to Ms. Rourke's claims.
DECREE
For the foregoing reasons, the district court's judgment of October 19, 2017 is affirmed.
AFFIRMED

See Joint Successions of Betty Becnel Rourke wife of/and Warren Joseph Rourke , Twenty-Fourth Judicial District Court No. 708-240, Division G.

See 3006 Roberta, L.L.C. v. Rebecca Rourke , Twenty-Fourth Judicial District Court No. 768-466, Division C.

Rebecca Rourke v. The Estate of Debra Frances Dretar, et al. , Twenty-Fourth Judicial District Court No. 772-238, Division P. These proceedings are the subject of appeal No. 17-CA-762, which was docketed before this Court as a companion case.

Ms. Rourke's date of birth is December 12, 1960.

Louisiana Housing Program, L.L.C. is a limited liability company with one member, Kenneth Dretar, and for which Ms. Dretar is the registered agent.